CASE 18—PETITION ORDINARY—MARCH 25.

# Baumeister, &c. v. Markham.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. PRACTICE IN CIVIL CASES—CONTINUANCE.—In an· action against several defendants on account of injuries to the person, all the defendants being summoned and before the court, a dismissal of the action by the plaintiff as against one of the defendants does not involve the right of the others to a postponement of the trial, or a continuance of the case.

2. PRACTICE IN CIVIL CASES—HUSBAND AND WIFE.—Under the provisions of sec. 34 of the Civil Code, a wife may sue in her own name for injury to her person or character if her husband refuses to unite with her; and where the husband has for several years failed to support and protect his wife, and has deserted her and married another woman, his conduct is tantamount to a refusal to unite in any action she might bring.

3. PRACTICE IN CIVIL CASES—JUDGMENT IN AN ASSUMED NAME.—In a suit by a plaintiff for injuries to the person, she being the identical person who received the injuries complained of, a judgment in her favor will not be annulled because she chose to sue in a name adopted by her for the stage, and by which she was generally known, such a judgment being a complete bar to any action for the same cause against any of the defendants.

4. PRACTICE IN CIVIL CASES—PEREMPTORY INSTRUCTIONS.—To authorize the giving of a peremptory instruction to the jury to find for the defendant, it should appear that admitting all the testimony to be true, and every inference fairly deducible from it, and considering all the undenied allegations of the petition, the plaintiff still failed to· support his claim.

5. CONTRACTOR AND SUB-CONTRACTOR—JOINT LIABILITY.—The general rule is that the original contractor in the construction of a building is not liable for the neglect or wrongful act of an independent sub-contractor; but where the original contractor and the sub-contractor have joint supervision over the construction of the building, and co-öperation in its construction is necessary between them, and that part of the construction undertaken by the sub-contractor is concurrently and conjointly done with the remaining portion of the work which is under

Baumeister, &c. v. Markham.

the control of the original contractor, they are jointly liable to persons injured by reason of their negligence.

6. DUTY OF CONTRACTORS—DEGREE OF CARE REQUIRED.—The degree of care required of contractors who are constructing buildings and making excavations on the streets of a city should be proportionate to the danger and risk of injury involved in the circumstances of the particular case, and their legal duty requires of them the exercise, at least, of ordinary care during the entire time that they are constructing the improvements in guarding the dangerous places and protecting the public from liability to injury.

7. SAME.—It is not a sufficient answer by a contractor for a wrong and injury done to one, by reason of the excavations, and the failure to properly guard and protect it, to say that that hole was covered and barricaded five or six hours before the injury was inflicted, there being no evidence, whatever, as to how and by whom it was in the mean time exposed and unguarded.

8. SAME.—But the improvements being both unauthorized and dangerous, the hole or excavation in this case was *ipso facto* a nuisance, and the contractors having unjustifiably and without excuse caused the excavation were bound to keep it clear from danger to others, and the question of diligence does not enter into the case.

9. SPECIAL DAMAGES—IMMORAL CONTRACT.—An instruction telling the jury that the plaintiff could not recover special damages on account of her broken leg, if it was a part of her business to go upon the stage and exhibit her legs in such a way as is indecent in fact, and immoral in its tendencies, or on account of the loss of her opportunity to earn money in such employment, was properly refused.

P. B. & UPTON W. MUIR FOR BAUMEISTER & BRO.

1. A suit must be prosecuted in the real name of the party in interest. Civil Code, sec. 18.

2. The Baumeisters were not liable for the negligence or carelessness of Merriweather, he being an independent contractor. Robinson v. Webb, 11 Bush, 474; Thompson on Negligence, vol. 2, pp. 892, 909 and 912; Rivans v. Chicago, 71 U. S., 432, or 4 Wall, 679; Clark v. Fry, 8 Ohio St., 377; Shearman and Redfield on Negligence, 76 and 80; Defores v. Wright, 2 Mich., 316.

3. The whole of excavation had been securely barricaded and covered, and so remained until after night set in, and there was

no liability upon the part of the defendants, even though said barricade or covering, without their knowledge, had been removed during the night of the injury complained of. The defendants were not bound to sit up and watch over the barricade during the night. Clark v. Fry, 8 Ohio St., 365; Dolfinger v. Fishback, 12 Bush, 481; Thompson on Negligence, vol. 1, 345-6; Ster v. Tuety, 45 Hunn, 53; Wood on Nuisance, 626; Shearman & Redfield on Negligence, 426; Dudley v. Town of Sullivan, 112 Indiana, 452; Mullen v. Rutland, 55 Ver., 79; Doherty v. Waltham, 4 Gray, 596; Daniels v. Potter, 4 Carrington & Payne, 375; Ayreman v. Keyesburg, 64 N. W. Rept., 86 (Wis.); Klatt v. Milwaukee, 53 Wis., 200; Aylesworth v. Chicago, &c. R. R. Co., 20 Iowa, 459; Neirs v. Jones County, 80 Iowa, 351.

ISAAC T. WOODSON for MERRIWEATHER.

1. The husband is a necessary party to an action for damages resulting from personal injuries to the wife, and especially when claims for loss of time and medical services are set up as special damages. Ohio & Miss. Ry. Co. v. Cosby, 107 Indiana, 35; Lewis v. City of Somerset, 16 Ky. Law Rept., 394; Sedgwick on Damages, vol. 2, 67; sects. 6 and 10, chap. 52 Gen. Statutes.

2. In an action of this class, when, before trial the defendant tenders an answer disclosing the coverture of the wife, who is suing alone, such answer is material; and whether good as a plea in bar or in abatement, it is an error to refuse to let it be filed. Sec. 34, Civil Code; Anderson v. Anderson, 11 Bush, 329; Chitty's Pleading, vol. 1, side page, 74; Lewis v. City of Somerset, 16 Ky. Law Rept., 394; Eden v. Louisville and Frankfort R. R. Co., 14 B. M., 164; Petty v. Malier, 14 B. M., 199.

3. On dismissal by plaintiff of an action as to one of several joint *tort-feasors*, on the day of the trial, the action does not stand for trial.

4. Peremptory instruction as to one defendant is authorized when, at the close of plaintiff's evidence, neither the plaintiff's proof nor the pleadings authorized any finding against such defendant.

5. Owners of real estate, in a city, have a legal and constitutional right to the use of their property together with certain easements and privileges, and among other rights they may improve their property, and in so doing may temporarily and reasonably obstruct the sidewalk; and if in so doing they or their agents and employees use ordinary care to avoid injuries to per-

sons passing along the sidewalk, neither they, nor their agents, nor servants, are guilty of a nuisance, nor are they trespassers upon the public highway, but they are exercising a lawful privilege, which neither a city council, nor a legislature, nor a court of justice is authorized to deny them. Lexington & Ohio R. R. Co. v. Pollock, 8 Dana, 295; Dolfinger v. Fishback, 12 Bush, 480; Dillon's Municipal Corporations, sec. 712; Nathery v. Wolf, 2 Duvall, 139; Rider v. Kinsey, 64 N. W. Rept., 94; Fisher v. Thirkell, 21 Mich., 1; Thompson on Negligence, vol. 1, 345; Wood on Nuisances, 236, 239.

6. The deprivation of a privilege to fulfil a contract to do an immoral, or indecent act, or an act which is in its nature against public policy, is not an element of damage in a civil action. Sedgwick on Damages, 200; 7 Texas, 67; Cappell v. Hall, 7 Wall, 558; Nork v. Able, 3 Bosanquet & Puller, 35; Armstrong v. Toler, 11 Wheaton, 258; Collins v. Blantern, Smith's Leading Cases, 681 and notes.

O'NEAL, PHELPS & PRYOR, HUMPHREY & DAVIE, and ALFRED SELLIGMAN for appellee.

1. The damages are not excessive. Maysville R. R. v. Herrick, 13 Bush, 122; Louisville Ry. v. Smith, 2 Duvall, 556; Atlantic Co. v. Stewart, 2 Metcalfe, 122; L. & N. R. R. v. Mitchell, 87 Ky.

2. Neither Merriweather nor Baumeister can escape doing this wrongful act on the theory of independent contractors. Shearman & Redfield on Negligence, secs. 175 and 365.

3. There was no room for claiming that plaintiff was guilty of contributory negligence, and therefore the case can not be reversed for any evidence or instructions on that question, as they were immaterial. Robinson v. Mayor of Wilmington, 32 Atlantic Rept, 347; N.Y. Life Ins. Co. v. Savage, 58 Fed. Rept., 341; Kentucky Code, sec. 134.

4. The instructions of the court requiring the defendants to exercise ordinary care not only in putting barricades around the hole, but also to exercise reasonable care in seeing that they were kept there in safe condition, was a correct instruction,—indeed it was too favorable for the defendants, as the defendants really should have been held liable for the open hole on the sidewalk, whether they were negligent or not; but the instruction only held them liable in case of negligence. Elliot on Streets and Roads, pages 365, 483, 640, 540, 541; Tarry v. Ashton, Law Rept., 1 Q. B. Div., 314; Crawford v. Wilson & Bailey Mfg. Co., 28 N. Y. Supplement, 514; Congreve v.

Smith, 18 N. Y., 79; Congreve v. Morgan, 72 Amer Dec., 495; Dillon on Municipal Corporations, 4th Edition, secs. 1032-1033; Ray on Negligence of Imposed Duties, p. 109; Thompson on Negligence, p. 1235; Wood on Nuisances, 2nd Edition, 266, note; Barry v. Terkilson, 1st Am. St. Rept., 55; Irwin v. Wood, 51 N. Y., 224; Hotel v. Walters, 23 Neb., 280; Portland v. Richardson, 89 Am. Dec., 720; Calder v. Smalley, 55 Am. Rept., 271; Jennings v. Van Shaike, 2 Am. St., Rept., 459; Clifford v. Dam, 81 N. Y., 52.

5. The cases chiefly relied upon by appellants are: Fisher v. Thirkell, 21 Mich.; Clark v. Frye, 8 Ohio State; but these have been discredited—the Michigan case in Elliot on Roads, p. 541, note 2, and in Dillon on Municipal Corporations, sec. 1033, note. The cases are spoken of under the head of "But see" or "Contra" as cases that merely dissent from the general law.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Pauline Markhan brought this action against John Baumeister & Brother, J. J. Merriweather and city of Louisville to recover for personal injury, consisting of a broken leg and bruises on other parts of her body which resulted from a fall at night into a hole in the sidewalk of Seventh street.

The action when called for trial was, on motion of plaintiff, dismissed as to city of Louisville and this is an appeal from a judgment against the remaining defendants for $4,000 in damages.

1st. It is urged as ground for reversal that the lower court disregarding section 363, Civil Code, overruled the motion for continuance made by the other defendants, now appellants, upon dismissal as to city of Louisville. That section does provide the plaintiff in an action ordinary, other than actions on contract, can demand a trial at any term as to part of the defendants, only upon dismissing his action on the first day of such term as to the others. But we still think, as held in Buckley v. Lambert, 4 Met., 330, it was intended

to apply merely in cases where some of the defendants have been summoned and others not summoned.

In our opinion the ruling in question was authorized by section 373 as follows: "Though several defendants are summoned, judgment may be rendered against any of them if the plaintiff would have been entitled to judgment against them in an action against them alone." For, as under it, judgment might have been rendered against any defendant to this action, all being summoned, dismissal as to city of Louisville plainly did not involve the right of the others to postponement of the trial.

2d. Two days before that on which the action was set for trial Baumeister & Brother and Merriweather each tendered an amended answer, stating they had recently learned the person suing was a married woman, wife of Randolph Murray, and not named Pauline Markham; but their motion to file was overruled.

Unless the alleged facts are material there was no need of filing the amended answer, about which the court then had discretion, nor error in denying the motion to file. Section 34, as amended in 1892, is as follows: "In actions between husband and wife; in actions concerning her separate property; and in actions concerning her general property; and in actions for the personal suffering of, or injury to her person or character in which he refuses to unite, she may sue or be sued alone." So the only relevant inquiry touching capacity of appellee to sue alone in this action is whether her husband, if she has one, refused to unite. But that question was not raised in either amended answer, nor by motion for rule against her to show cause why the action should not be

dismissed which would have been proper practice.   And even if it had been done, her right to sue alone would have been shown by the fact Murray, beside deserting her and marrying another woman, has for several years failed to support and protect her, which conduct should be treated as tantamount to his refusal to unite in any action she might bring.

Section 134 provides the court may at any time in furtherance of justice and on such terms as may be proper, cause or permit a pleading or proceeding to be amended by correcting a mistake in the name of a party, but appellee did not offer to amend her petition in that respect, nor did appellants move the lower court to require it done.   The question then arises whether a judgment may be affected by being rendered in the assumed instead of real name of a plaintiff.

It is a rule of practice recognized by this court that if the defendant to an action, though sued in the wrong name, was in proper person before the court and litigated with the plaintiff about the subject of controversy, a judgment against him on the merits of the case is as valid and effectual as if he had disclosed, and the action had been rendered in his true name.

There is no reason why the same rule may not as well apply to the case of a plaintiff suing in an assumed name, if the defendant has not been thereby prejudiced.    Therefore, if appellee be the identical person who received the injury complained of, as is so, the judgment in her favor should not be held invalid for the only reason she chose to sue in a name adopted for the stage, and by which she is generally known, for appellants have not been thereby misled, nor can she

maintain another action for the same cause against them or either of them.

3d. At the conclusion of evidence in chief on behalf of appellee, Merriweather asked for a peremptory instruction to the jury in his favor, which was refused. To authorize such instruction it should appear that, admitting the testimony to be true and every inference fairly deducible from it the plaintiff still failed to support his claim. (Shay v. R. L. & T. B. Co., 1 Bush, 103.) But that rule is qualified by another, that an allegation in the petition, admitted or not sufficiently denied in the answer, need not be proved.

The testimony in chief on behalf of appellee shows that she went to Louisville under a contract to perform as leading actress in a theater, arriving at Seventh street railroad depot on a Sunday about 11 p. m., thence, accompanied by others, she proceeded along that street, which was a direct route to the boarding house where she started to go; and while walking on the sidewalk abreast with her companions and next to the row of houses between Main and Market streets, fell into the hole, and was injured as mentioned. The hole was a part of or an opening to the cellar of a brick house then being torn down, extended in, or, when properly covered, under the sidewalk about four feet; and was made by timber or brick falling or being thrown down upon and breaking the door-shutter or boards used to cover it. But it was at the time plaintiff received the injury neither covered, fenced or in any manner enclosed, and, though the night was a dark one, there was no light by lamp, or otherwise, to enable persons passing along there to see or avoid falling into it.

The testimony introduced by appellee fully established the

fact she was injured by negligence or wrongful act of others, without fault on her part.   But she did not prove, though it was at a subsequent stage of the trial shown, that Merriweather or his servants actually caused the opening into which she fell.   Nor do we think it was indispensable for her to do so in order to maintain the action against him, for, in her petition, she distinctly alleged, not only that he and Baumeister & Bro. wrongfully caused the hole, which was large and dangerous, to be made, but wrongfully and in disregard of their duty, permitted it to remain open, exposed and unlighted.   And, although it is not in his answer expressly admitted he caused it to be made, he does substantially confess it was his legal duty to keep it sufficiently covered, barricaded and lighted at night to prevent persons of ordinary diligence falling into it; and pleads, in avoidance of liability for his alleged failure to perform that duty, that he did do so, and, if such was not the condition when appellee received the injury, it was because evil-disposed persons had, without his knowledge or consent, removed the covering, barricades and lights he had caused to be put there.

In our opinion facts sufficient to constitute *prima facie* a cause of action against him were either proved by her or admitted, in his answer; and, consequently, the peremptory instruction was properly refused.

4th. It appears that Baumeister & Brother were the original contractors for the entire work of tearing down the old and constructing a new building at the place appellee was injured; but made a sub-contract with Merriweather, the terms of which are shown by a written proposition signed by him and accepted by them, in these words: "I propose to do

the following brick work, in addition to storehouse on the northwest corner of Seventh and Market for Samuel Brandeis' estate, in accordance with plans and specifications; take down all brick wall, clean the brick to be used again in the new building and move away the rubbish; and will furnish all new brick and lay same to complete house, in accordance with plans and specifications, for the sum of $1,126." And it is now argued for them that, he being an independent contractor, is singly, if at all, and they are not in any event liable in this action.

The recognized general rule is that, in order to render one person answerable for another's neglect or wrongful act, there must exist between them the relation of master and servant involving right of the former to control the conduct of and discharge from his service or employment the latter. And accordingly it was held in Robinson v. Webb, 11 Bush, 474, cited by counsel, "that when the relation of independent contractor exists as to the use of real property, and the party employed is skilled in performance of the duty he undertakes, and the thing directed to be done is not in itself a nuisance, or will not necessarily result in a nuisance, the injury resulting not from the fact the work is done but from the negligent manner of doing it by the contractor or his servants, the owner can not be made to respond in damages."

It seems to be also established that the question as to liability of the original contractor for negligence or wrongful act of an independent sub-contractor should be determined by the same rule. So if it be applied in this case without qualification or exception, Baumeister & Brother would probably be exempt from liability, for as Merriweather had

the right to complete that portion of the work specified in the contract between them free of their control or power to discharge him, he was *pro tanto* an independent contractor. But it was held in the same case that the rule should be so qualified that when the act must necessarily result in a nuisance, unless it be prevented by proper precautionary measures the owner is bound to the exercise of such measures. And in Matheny v. Wolffe, 2 Duv., 137, is this language: "If the owner of real estate suffers a nuisance in or adjacent to his premises in prosecution of a business for his benefit, when he has the power to abate the nuisance, he is liable for an injury resulting therefrom to third persons." Of course the same duty is put upon and same liability for non-performance of it is incurred by the principal contractor in temporary possession of real property for erection of a building thereon, and during prosecution of the business by a sub-contractor. Besides, although the owner or, as in this case, the original contractor is not generally answerable for negligence or wrongful act of an independent contractor or sub-contractor, special circumstances may exist making him so. (Thompson on Negligence, 912.) And undoubtedly where joint supervision and co-operation of the principal contractor of a building on a highway and of his sub-contractor of a portion of it becomes necessary and is exercised, a joint obligation to the public will exist, and joint liability be fixed for personal injury to a stranger, resulting from an act done or duty omitted by the latter during prosecution of the business.

We think such is this case. For, although the opening in the sidewalk may have been actually caused by Merriweather or his servants, and he was for that reason bound while doing

his part of the work to use all necessary means to prevent injury thereby to others, still, as the remaining portion was under control, required presence of and had necessarily to be done by Baumeister & Brother concurrently and conjointly with the brick work devolved upon him, they were not released from their primary duty to the public as principal contractors, but bound to see to it the business was so done as not to hurt other persons. The instruction asked specially in their behalf was, therefore, properly refused.

Witnesses for appellant testify that at close of the day's labor on Saturday preceding the Sunday appellee fell into the hole or area in question it was covered with door shutters and enclosed by joist resting on upright barrels in which were put bricks, and fastened to and braced by other joists. But the evidence does not show by whose agency or why the condition was subsequently so changed that at 11 p. m. Sunday the hole was neither covered, barricaded nor lighted.

Instructions given to the jury and refused as to duty and liability of appellants necessary to be considered are as follows:

1st. The court instructs the jury that it was the legal duty of the defendants, John and Henry Baumeister, and J. F. Merriweather at all times, during and while they were constructing the improvements in question, to so guard or protect, or cover or fence around or otherwise secure and make safe the area or cellar opening on the sidewalk in front of the building they were repairing, as to make it safe for pedestrians passing along said sidewalk at night.

2d. That in the performance of the duty defined in instruction, No. 1, the defendants were required by law to exercise

ordinary care—that is, that degree of care which persons of reasonable prudence are accustomed to exercise under the same or similar circumstances to prevent injury to others. That ordinary care as thus defined varies with the circumstances of particular cases, and is and must always be proportionate to the danger or risk of injury involved in the circumstances of the particular case so that what might be ordinary care under one set of circumstances, when little or no danger or risk is involved, might be negligence or want of ordinary care under other and different circumstances when the danger, risk or probability of injury to others is great; in other words, the law requires that the care to be exercised shall always be reasonably proportionate to the danger of risk or probability of risk to others, that may arise out of the nature and character of the act or acts creating such risk or danger.

3d. That the duty defined in instruction No. 1, with the care defined in instruction No. 2, continued with the defendants at all times during and while the area or cellar-opening remained on the sidewalk from the beginning to the completion of the work of the construction or improvement of said building.

4. If the jury believe from the evidence that the injuries complained of by the plaintiff were caused by failure on the part of defendants, or either of them or their servants or employes, to perform the duties defined in instruction No. 1, with that degree of care defined in No. 2 then the law is for the plaintiff, and the jury should so find; unless the jury should also believe from the evidence that on occasion of the injuries or falling into the cellar the plaintiff failed to exer-

cise such care for her own safety as an ordinarily prudent person would have exercised under the same or similar circumstances. and that but for such failure on her part the injury to her would not have been inflicted, in which event the law would be for the defendants, and the jury should so find.

Appellants asked for various instructions that were refused, the following being the only one necessary to consider: "If the jury believe from the evidence that the area into which plaintiff claims to have fallen was on Saturday about 6 o'clock p. m. so covered by defendants or their employes as to secure all persons passing on Seventh street from injury, and that said area remained so covered and secure through Sunday until night set in, the law is for the defendants, even though they should believe that the said area was uncovered at or about 11 o'clock that night, and plaintiff fell into it and received the injury complained of, unless they should further believe from the evidence that defendants or some one of them knew that said area was uncovered."

Obviously the primary purpose of a street is for travel and passage of the public. And, as said in Dillon's Municipal Corporations, section 1032, on authority of numerous cases cited, "no person, not even the adjoining owner whether the fee of the street be in himself or in the public, has the right to do any act which renders the use of the street hazardous or less secure than it was left by the municipal authorities. Whoever does so, whether by excavation made in the sidewalk, or by opening or leaving open an area-way in the pavement or in any other manner which makes use of the street unsafe or less secure, is guilty of a nuisance."

But of course the right of the public to free and unobstructed use of a street must be subject to reasonable limitations and restrictions in the interest of commerce and improvement of adjacent lots, that incidentally involve excavations under sidewalks, deposit of building materials and other obstructions. Though in language of the same author, section 930, "an excavation, even when licensed by municipal authority, must be made in such manner as shall not in any measure detract from safety of the streets for public travel, nor can a street be obstructed for any purpose in an unreasonable manner or for an unreasonable time."

But while there appears to be a general assent to correctness of that rule there is some divergence of judicial views as to the degree of care required of an abutting owner in order to relieve himself of liability for injury resulting to another from obstructions put in a street for his own private purpose.

In the case of Congreve v. Smith, 18 N. Y., 79, the action was for personal injury resulting from the breaking of an unsuitable and unsafe flag stone forming part of the sidewalk, and falling of a small child into the area beneath. It was there held that a person who, without special authority, makes or continues a covered excavation in a street for a private purpose, is, in the absence of negligence of the party injured, responsible for all injuries resulting from the way being thereby rendered less safe, irrespective of any degree of care or skill of the party who makes or continues the excavation. And in the case of Congreve v. Morgan, for personal injury arising in the same manner and the same time, the court said: "The liability of the defendants does not depend upon their negligence, either in providing

an unsuitable stone or in continuing the use of it, after
it had become unsuitable from any cause, but from the
fact that the stone was unsafe at the time the injury
occurred, and thereby occasioned the injury.    When
the stone became unsafe for any reason, the area was a
public nuisance, in like manner as any injury or obstruction
to the street would be, and the defendants who continued it
were responsible for it to the public, and to individuals
receiving special damage from it.    They were bound at their
peril to keep the area covered in such manner that it would
be as safe as if the area had not been built.    This measure
of liability is essential to the public interests and the pro-
tection of the rights of individuals."

In the case of Clark v. Fry, 8 Ohio State R., 358, cited by
counsel, the action was against the owner of a lot adjacent to
the street and a contractor of a building to be erected thereon
for an injury resulting from falling into a hole opening into
a cellar that was not sufficiently covered or guarded.    But
the main question was whether Clark, the owner, was liable
at all, the contractor, Freeman, being at the time in posses-
sion and control of the premises.    Though determination of
that question involved inquiry whether the excavation in
question, being made without special authority, was unlaw-
ful, the court conceding that if it had been *ipso facto* unlawful
as an unnecessary encroachment on the street, Clark and
Freeman would have been liable, if any liability existed,
jointly as wrong-doers.    And upon that subject the court
said:  "As the excavation was an act pertaining to the con-
struction of a building on a lot fronting upon the street, if
necessary and proper, it was not necessarily or intrinsically

unlawful, and whether it became unlawful depended on whether it was extended to an unnecessary or unreasonable extent into the street; or whether it was made in an improper or dangerous manner; or whether, through negligence, it was left insufficiently guarded by a fence, or allowed to continue an unreasonable length of time, these being questions of fact to be determined by the jury."

In Fisher v. Thirkill, 21 Mich., 1, also relied on by counsel for appellants, the question was whether the owner of a building who had, without express municipal authority, made a scuttle or hole in the sidewalk, or his tenant was liable for injury to a traveler caused by its being out of repair, it appearing to have been safely constructed originally. And the court held such excavations, if properly made and guarded, to be lawful unless done in contravention of some law, and to draw after them no such consequence as that the party making them shall be responsible for all injuries resulting from the want of entire safety. But Dillon, in a note commenting on that case, said: "Since these excavations are made for the exclusive benefit of the owner of the building, the author sees nothing unreasonable in the doctrine that he is bound to see that they are kept in repair, and do not become nuisances by becoming dangerous."

The precise question now presented has not been directly decided by this court. But it seems to us not at all unjust or unfair to simply require of the owner of a lot, as condition of being permitted to obstruct a street for his private benefit and to the inconvenience or annoyance of the public, that he does not render it thereby less safe for travel. And if he fails to comply with that condition it should not make any difference

Baumeister, &c. v. Markham.

whether the improvement be made by or without municipal authority, as in either case he would be derelict in a duty he owes to the public and liable for resulting injury to another. Nor need there result any hardship upon the owner, because, unless, as said in Robinson v. Webb, the thing directed to be done is in itself a nuisance, or will necessarily result in a nuisance, the contractor or tenant in possession may be generally made to respond in damages for an injury done in prosecution of an improvement, or by reason of failure to repair.

However, there is no necessity to apply a harsher rule in order to justify the instructions given in this case than that stated in Nelson v. Godfrey, 12 Ill., 22: "But while we infer a license thus to use part of a public street, it is on the condition that the person doing so shall use more than ordinary care and expedition in prosecution of the work. Neither the public nor other individuals derive any possible advantage from such a use of the sidewalk, but it is solely for the benefit of the person thus using it, and he must see to it that he does not endanger the safety of others, and that he incommodes the public as little as possible."

Therefore, we do not think appellants can justly complain of the legal proposition stated in one of the instructions, that the required care in such cases should be proportionate to the danger or risk of injury involved in the circumstances of the particular case. Nor did their legal duty require of them less than at least ordinary care during the entire time they were constructing the improvements, in guarding the dangerous hole they had made; such, as we interpret it, being the meaning of instruction No. 1.

It thus follows that the instruction asked by appellants and refused does not describe the full measure of diligence and care required of them. And it seems to us it is not a sufficient answer for the wrong and injury done to appellee that the hole was covered and barricaded five or six hours before she was hurt, without any evidence whatever as to how or by whom it was in the meantime rendered exposed and unguarded. In fact it is scarcely credible that disinterested persons were willing to take the risk of detection by the police or persons passing along the street and expend the labor and time required to effectually tear away and remove all the covering and fencing, if the hole was as securely covered and strongly barricaded, and so remained up to nightfall, as is assumed in that instruction to have been done. But whether it was so, the jury were permitted and required by the instructions given to consider and determine.

However, the question of diligence does not really arise in this case, because making the opening in question was not an incident of or necessary to, but an act disconnected with the improvement appellants had undertaken to construct, and, being both unauthorized and dangerous, was *ipso facto* a nuisance, and appellants, having unjustifiably and without excuse caused it, were bound at their peril to keep it secure and safe from danger to others.

We are not authorized to conclude amount of the verdict in this case was result of passion or prejudice of the jury, and so it is not province of this court to disturb it.

Judgment affirmed.

The court delivered the following response to the petitions for rehearing on the 18th of June, 1897:

We see nothing in the two able and earnest petitions for rehearing to convince us the ruling in the opinion delivered is incorrect, or that was not substantially presented for our consideration in the original briefs.

But we will now consider an alleged error omitted from that opinion, and again called to our attention in the petition of Merriweather—that is, refusal of the lower court to give the following instruction: "The court instructs the jury that if they believe from the evidence that a part of the business of the plaintiff was to go upon the stage and exhibit her legs in such manner as is indecent in fact and immoral in its tendencies, then, in this event, the loss of opportunity to earn money in such employment can form no basis for recovering damages."

The object of that instruction was to inhibit the jury giving damages by reason of loss of profits from a special contract made by appellant with the proprietor of a theatre to perform as "a burlesque opera bouffe artist."

It may be, as testified by appellant, such performance requires the artist to "show her limbs in silk stockings," but, while it is tolerated by law and patronized openly and freely by the public, the court can not arbitrarily outlaw those who earn a livelihood in that way.

The petitions are overruled.