## Jennings v. Vincent's Adm'x.
## Same v. Bell's Adm'x.
## Bell v. Axton-Fisher Tobacco Co.
## Vincent v. Same.

Nov. 29, 1940.

Burrel H. Farnsley, Judge.

Davis, Boehl, Viser & Marcus and Dodd & Dodd for Jennings.

Nathan Kahn, Richard Priest Dietzman and W. S. Heidenberg for Administrators.

Charles W. Morris and Morris & Garlove for Tobacco Co.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing in part and affirming in part.

John D. Jennings entered into an agreement with the Axton-Fisher Tobacco Company, hereinafter referred to as the Company, to construct a sweathouse for it in Louisville to be used in ageing tobacco. The

American Builders Supply Company, hereinafter referred to as The American, was a subcontractor on this job, having a contract with Jennings to furnish the necessary labor and material for re-enforcing steel for the walls and floor of the building. While the building was being insulated there was an explosion which killed Hova Vincent and Wavie Bell, and injured Robert Orr, all of whom were employees on this job of The American.

The building fronted 87 feet on Nineteenth Street and extended westwardly 104 feet towards Twentieth Street to the rear wall of an old plant which was utilized as the rear wall of this new structure. This sweathouse was a very low building, being only 6½ feet high. It had no windows in the walls or vents in the roof, except on Nineteenth Street there were two open doorways some 30 feet apart and in the rear wall there was a door 6 by 8 feet. The building was to be insulated with Celotex, the walls were coated with melted asphalt and the Celotex was pressed into the asphalt. The floor was insulated by a patented plastic known as R. I. W., a highly volatile substance which a chemist testified would flash at 95 degrees Fahrenheit, with a fire point at 100 degrees. The drums containing the R. I. W. had this warning painted on them: "Do not open nor use near open flame; provide good ventilation during use."

At the time of the explosion which was on the morning of July 6, 1936, the three walls, together with the common wall of the old building, and the roof had been completed. The door in the back wall was closed and the only openings in the sweathouse were the two doors on Nineteenth Street. This explosion occurred on Monday morning after about 200 gallons of R. I. W. had been applied on the floor and Celotex affixed thereto on the preceding Thursday or Friday. Due to the Fourth of July holiday no work had been done in the building since the previous Friday. An open vat in which the asphalt was being melted was about half way back in the building. As the gasoline burners were not inclosed, there was an open flame under this heating vat. On the morning of the accident, workmen of Jennings' were carrying R. I. W. in open buckets containing from two to three gallons from the drums outside into the building and within a few feet of the open flame under neath the vat. A flame was seen to shoot up from the gasoline burners, it ran rapidly along the ceiling of

the building and a terrific explosion occurred. The architect and also Coffman, the Company's engineer, knew there was an open flame under the vat while R. I. W. was being spread in the building.

The dependents of the two men who were killed and Orr filed applications with the Workmen's Compensation Board against The American, and proper awards were made in their favor. The administratrices and Orr all filed suits at law against Jennings and the Company alleging that the explosion and resulting deaths and the injury to Orr were due to the negligence of Jennings and the Company.

Jennings' answers traversed the petitions and affirmatively pleaded contributory negligence on the part of the decedents and Orr. These answers contained a third paragraph incorporating an affirmative plea that Jennings was the principal contractor for the Company; that the two decedents and Orr were employees of the subcontractor on the job, The American; that both contractors and their employees were all operating under the Workmen's Compensation Act, Kentucky Statutes, Section 4880 et seq., and that the explosion occurred on the premises on which Jennings was executing his contract; that applications had been made to the Workmen's Compensation Board (hereinafter referred to as the Board) for compensation against The American, and awards had been made against it in favor of the dependents of the two decedents and in favor of Orr; that The American had appealed to the circuit court from these awards by the Board, which awards were affirmed by the circuit court; and that the judgment of the circuit court affirming the awards had not been appealed from nor modified.

The answers of the Company first traversed the allegations of the petition, then pleaded contributory negligence on the part of the decedents and Orr, following which was an affirmative plea in bar of the action that it had no control over the construction of the sweathouse, but that same was being constructed by Jennings, an independent contractor.

The trial judge sustained general demurrers filed by the plaintiffs to the third paragraph in Jennings' answers and the court refused to let Jennings file an amended answer pleading res adjudicata to the effect

that the Board had found the accident was caused by the negligence of The American and that Jennings had not been negligence, which finding of the Board was affirmed on an appeal to the circuit court. The three cases were tried together and at the conclusion of all the evidence the trial judge gave a peremptory instruction in favor of the Company and also gave a peremptory instruction in favor of Jennings as against Orr, but submitted to the jury the cases of the two decedents against Jennings. The jury returned verdicts in favor of each decedent in the sum of $10,000. Jennings appeals from the judgments entered on the verdicts against him, and the two administratrices appeal from the judgments entered on the verdicts directed against them in favor of the Company. There was no appeal prosecuted by Orr.

Jennings insists the circuit court erred in sustaining general demurrers to the third paragraph of his answers, contending that after an award for the death of an employee is made by the Board against his employer, who is a subcontractor, such decedent's estate cannot recover at law against a principal contractor. The two administratrices on their appeals argue that the circuit court erred in holding that because Jennings was an independent contractor, the Company is not liable, contending that the work was of such an inherently dangerous nature that the owner could not be relieved by a contract from damages resulting therefrom.

The actions of the administratrices against Jennings are based upon Section 4890, Kentucky Statutes, which is part of the Workmen's Compensation Act and reads:

> "Whenever an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employe may at his option either claim compensation or proceed at law by civil action against such other person to recover damages, or proceed both against the employer for compensation and such other person to recover damages, but he shall not collect from both, and if compensation is awarded under this act either the employer or his insurance carrier, having paid the

compensation or having become liable therefor, shall have the right to recover in his or its own name or that of the injured employe from the other person in whom legal liability for damages exists not to exceed the indemnity paid and payable to the injured employe.''

In McEvilly v. L. E. Myers Co., 211 Ky. 31, 276 S. W. 1068, 1071, we had before us, as in the instant case, the right of an employee of a subcontractor injured by reason of the alleged negligence of the principal contractor, while all were engaged on the same job, to institute an action at law for damages after the Board had awarded him compensation against his employer, the subcontractor. It was there written that ''some other person'' as used in Section 4890 ''refers to a third party having no connection with the general work being performed, and whose act of negligence was wholly disconnected with that work, and that the section does not apply as between the contractor and the employee of a subcontractor working upon the same premises in the performance of the ultimate object to be accomplished, and especially so if both of them, as well as the employee, are operating under the provisions of the Compensation Act.'' It was there pointed out that under such an existing state of facts the next section, 4891, applies wherein the injured employee may not only proceed against his own employer for an award by the Board, and if not paid, he may proceed to collect his award against the principal contractor.

It is argued for the administratrices that the Myers case gave too broad an interpretation to the words ''some other person'' contained in Section 4890, and that it should not be followed, but instead we should accept Dillman v. John Diebold & Sons Stone Co., 241 Ky. 631, 44 S. W.' (2d) 581, 583, as controlling in the case at bar. In the Dillman case the employee of the principal contractor was injured by the negligence of the subcontractor and after receiving an award from the Board against the principal contractor, he instituted a common-law action against the subcontractor, contending that Section 4890 gave him a right of action and that it was not taken away by Section 4891, which reads:

''A principal contractor, intermediate or sub-contractor shall be liable for compensation to any em-

ployee injured while in the employ of any one of his intermediate or sub-contractors and engaged upon the subject matter of the contract, to the same extent as the intermediate employer. Any principal, intermediate or sub-contractor who shall pay compensation under the foregoing provision may recover the amount paid from any subordinate contractor through whom he may have been rendered liable under this section. Every claim to compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this act from the principal or intermediate contractor; provided, that the collection of full compensation from one employer shall bar recovery by the employee against any others; nor shall he collect from all a total compensation in excess of the amount for which his immediate employer is liable. This section shall apply only in cases where the injury occurred on, in or about the premises on which the principal contractor has undertaken to execute work or which are under his control otherwise or management.''

The Dillman case approved the Myers case wherein the latter reached the conclusion that Section 4891 was controlling and that Section 4890 did not apply as between the contractor and the employee of a subcontractor working on the same job in the performance of the ultimate object to be accomplished and said: ''But the right of an employee of a general contractor in the circumstances to sue a subcontractor is an entirely different question.''

In holding that Section 4891 did not take away the right of action of an injured employee of the principal contractor to sue the subordinate contractor under Section 4890, the Dillman case held that the subordinate contractor was ''some other person'' in so far as the employee of the principal contractor was concerned. In referring to Section 4891 it was said in the Dillman case, ''in short, the statute operates downward in so far as the liability of the principal or prior contractor is concerned, and upward, in so far as the employee's right of compensation is concerned.''

The Dillman case is not in the least conflicting with

the Myers case, but deals with just the opposite state of facts. As the instant case involves the exact question that was before us in the Myers case, it follows that the Myers case and not the Dillman case is controlling in the case at bar. We are asked to reconsider the Myers case if we think it is controlling in the instant case, but we think that McEvilly v. L. E. Myers Co., 211 Ky. 31, 276 S. W. 1068, is sound and we refuse to disturb it. Therefore, it follows that the trial judge should have overruled the general demurrers filed by the administratrices to the third paragraph in each of Jennings' answers.

It is argued by the administratrices that if Section 4891 deprives them of a right of action for the wrongful death of their decedents, then Section 241 of the Kentucky Constitution is violated. The answer to that argument is that their decedents voluntarily agreed to waive their rights of actions for a wrongful death in order to obtain the benefits under Section 4891 of recovering compensation from the principal contractor, although they were employed by a subordinate contractor. Penn's Adm'r v. Bates & Rogers Const. Co., 183 Ky. 529, 209 S. W. 513. Again, the Compensation Act, of which Section 4891 is a part, was declared to be constitutional in Greene v. Caldwell, 170 Ky. 571, 186 S. W. 648, Ann. Cas. 1918B, 604, in 1916 and has been so regarded at all times since that decision.

Another contention by the very able counsel representing the estates of the deceased workmen is that as death is not mentioned in Section 4891 that section only applies to injuries and is not applicable where death results from injuries. This point was decided adversely to this contention in Grannison's Adm'r v. Bates & Rogers Const. Co., 187 Ky. 538, 219 S. W. 806, 808, wherein it was written:

"It [the Act] applies when its provisions are accepted in every case of injury or death that occurs within the scope of the act, whether it be brought about by accident or negligence."

See Ruth Bros. v. Roberts, 270 Ky. 339, 109 S. W. (2d) 800. Other sections of the act, where no mention is made of *death* but reference is made only to *injury*, have been held by us to apply to instances where death resulted. Taylor's Adm'r v. Bates & Rogers Const. Co.,

196 Ky. 206, 244 S. W. 693; Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; Stiglitz Furnace Co. v. Stith's Adm'r, 234 Ky. 12, 27 S. W. (2d) 402. It is not reasonable to suppose the Legislature intended that Section 4891 would give an injured employee of a subcontractor the right of compensation against the principal contractor and would deny this right of compensation against such principal contractor in event the injuries to the employee prove fatal. From the authorities just above cited it is seen that the Compensation Act covers all cases within its scope involving fatal as well as nonfatal injuries.

We come now to the consideration of the question of whether or not the trial judge erred in directing a verdict in favor of the Company in the actions brought against it by the administratrices. As it is admitted Jennings was an independent contractor, the only theory upon which the company can be held liable for the death of the two workmen is that the spreading of the R. I. W. was so inherently dangerous that the Company cannot be relieved by contract of the probable result of its independent contractor using such a dangerous instrumentality. They rely upon such cases as Pine Mountain Ry. Co. v. Finley, Ky., 117 S. W. 413 (not reported in State Report), Lexington & E. R. Co. v. Baker, 156 Ky. 431, 161 S. W. 228; Blue Grass Fair Ass'n v. Bunnell, 206 Ky. 462, 267 S. W. 237; Baumeister v. Markham, 101 Ky. 122, 39 S. W. 844, 41 S. W. 816, 19 Ky. Law Rep. 308, 72 Am. St. Rep. 397. An examination of these cases shows that the general rule regarding the liability of the owner of property as to injuries and damages resulting from the acts of an independent contractor is that such owner is not liable unless the work to be done by the independent contractor is in itself a nuisance, or necessarily results in a nuisance, or unless the work or the instrumentality for doing it is inherently dangerous. But where the work is not a nuisance and is not inherently dangerous and the injuries or damages are caused by the negligent manner in which the independent contractor performs his task, then the owner is not liable. The rule as expressed in 39 C. J. 1331, Section 504, is to the effect that if the work is of such a nature that it will probably, and not which merely may, cause injury if the proper precautions are not taken, the owner is liable; but if it can be accomplished

without probable injury, except in the event of negligence, no liability attaches to the owner.

Here, there was no more danger in using this highly volatile R. I. W. than there was in using the gasoline in the burners underneath the vat, had proper care been exercised. There are many substances used in everyday life which are highly volatile and gases given off therefrom are explosive when brought into contact with a flame or spark of electricity, yet people generally do not regard gasoline, kerosene, naphtha, turpentine, etc., as being inherently dangerous, and they are not, when used with the proper degree of care. When danger is not naturally expected to result in the use of a substance or instrumentality, it cannot be said to be inherently dangerous and the owner is not liable for the injuries caused by the negligent use thereof by an independent contractor, Harris v. Stone, 256 Ky. 737, 77 S. W. (2d) 18. The architect specified R. I. W. in his plans and when an owner exercises due care to employ an architect to prepare plans and specifications for a building, which is constructed in accordance therewith by an independent contractor, the owner is not liable for any defects unless they were such that he should have known them, Prest-O-Lite v. Skeel, 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A, 474; Looker v. Gulf Coast Fair, 203 Ala. 42, 81 So. 832.

The judgments in Jennings v. Vincent's Adm'x, and Jennings v. Bell's Adm'x are reversed for proceeding consistent with this opinion. The judgments in Vincent's Adm'x v. Axton-Fisher Tobacco Company and Bell's Adm'x v. Axton-Fisher Tobacco Company are affirmed.