**LABOR READY, INC.; Labor Ready GPCO; and Sylvann C. Hudson, III, Appellants**

v.

**Wanda Sue JOHNSTON, Appellee.**

No. 2007–SC–000419–DG.

Supreme Court of Kentucky.

June 25, 2009.

Elizabeth U. Mendel, Woodward, Hobson & Fulton, LLP, Louisville, KY, Counsel for Appellants.

Timothy R. McCarthy, Nutt Law Office, Louisville, KY, Counsel for Appellee.

### OPINION OF THE COURT

In *United States Fidelity & Guaranty Company v. Technical Minerals, Inc.*, 934 S.W.2d 266 (Ky.1996), the court held that a company that contracted with a temporary labor service for temporary employees was a contractor for the purposes of Chapter 342. Thus, KRS 342.690(1) immunized the contractor from a temporary employee's tort action. This case presents the converse situation. It concerns whether a contractor's permanent employee may maintain a tort action against the temporary labor service and its employee for an

injury that occurred while working for the contractor.

The trial court granted summary judgment to the defendants, noting that KRS 342.690(1) would deem the workers to be co-employees if the temporary employee were injured and limit the temporary employee's remedy to compensation. Convinced that permanent and temporary workers performing the same work should be deemed co-employees regardless of which is injured, the court determined that KRS 342.690(1) immunized the subcontractor and temporary employee from the permanent employee's tort claim.

The Court of Appeals reversed on the grounds that no statute immunizes a subcontractor and its employees from a tort claim by an up-the-ladder contractor's employee and that the temporary employee and contractor's employee were not co-employees because KRS 342.615(5) deems a temporary help service to be a temporary employee's employer. We affirm for the reasons stated herein.

Wanda Sue Johnston, an employee of Mid–America Auto Auction, sustained a work-related low back injury on February 12, 2002, when struck by an automobile driven by Sylvann C. Hudson, III. Hudson was employed by Labor Ready, a temporary labor service. Mid–America employs eight to twelve permanent employees and conducts two or three auctions per week. The business supplements the permanent workforce on auction days by ordering the number of temporary workers that it deems necessary from Labor Ready. Mid–America checks the temporary employees' drivers' licenses when they arrive and sends back those who have safety or work-related issues.

Mid–America's permanent employees prepare vehicles for sale and drive them to and from the sales arena. They also supervise the temporary workers, whose primary duty is to help move vehicles during the auction. They may recommend that a temporary worker who performs inadequately be asked to leave. Temporary workers return to Labor Ready when the day's work is completed. Labor Ready pays them, handles tax withholding, and provides workers' compensation coverage.

Johnston settled her claim for workers' compensation benefits with Mid–America[1] and then filed a civil suit against Labor Ready, alleging that her injury resulted from its employee's negligence. When she discovered that Hudson was the employee who was involved in the incident, she amended her complaint to add him as a defendant. Labor Ready and Hudson moved for summary judgment, asserting that Labor Ready had no independent liability and that they were immune from tort liability for Hudson's alleged negligence because Hudson was Johnston's co-employee for either of two reasons. First, both of them were working at Mid–America's auction when the accident occurred and, second, Hudson worked for Mid–America as a loaned employee.

The trial court granted the motion and dismissed Johnston's claims. Noting that KRS 342.610 and KRS 342.690 provided Mid–America with up-the-ladder immunity from a civil suit by a Labor Ready employee, the trial court held that Hudson and Johnston must be viewed as being co-employees. The court reasoned:

> [I]f ... a *permanent* employee of a contractor-employer were allowed to receive workers' compensation benefits from her employer *and* also assert a tort

1. The parties settled the claim on June 12, 2003, for a lump sum that represented a permanent partial disability based on an 11% permanent impairment rating. The settlement holds Mid–America liable for future injury-related medical expenses.

claim against the subcontractor-employer, then a substantially greater right would be possessed by the permanent employee than the temporary employee, despite the possibility that both might be performing exactly the same work.... Such a disparate result simply cannot be the correct application of the law and would quite possibly violate one or more of the due process, equal protection or other constitutional rights of the temporary worker and constitute an arbitrary exercise of power in violation of Section 2 of the Kentucky Constitution. (emphasis original).

As further support for the decision, the trial court noted that the contract set forth in paragraph 5 of the "Work Ticket" required Mid–America to indemnify Labor Ready "from any claims and all liability" caused by a Labor Ready employee and "from any claims for bodily injury (including death) made by [Mid–America's] employees." The contract also provided that Mid–America agreed "to waive any immunity provided by workmen's compensation or other industrial insurance laws." Noting that Mid–America might be required to pay both workers' compensation benefits and damages if Johnston were permitted to proceed against Labor Ready, the court determined that such a result was unreasonable and contrary to the purposes of the Workers' Compensation Act because it would effectively abrogate the Act's limitation of tort liability.

The standard for reviewing a decision to grant summary judgment is whether the movant was entitled to judgment as a matter of law because there was no issue of material fact.[2] The trial court must consider the evidence in the light most favorable to the plaintiff and grant summary judgment only if the plaintiff could not possibly produce evidence at trial to warrant a favorable judgment.[3] The trial court erred in the present case because the defendants failed to show that they were entitled to judgment as a matter of law.

This appeal concerns the application of four statutes: KRS 342.690(1), KRS 342.610(2), KRS 342.700, and KRS 342.615.

Known commonly as the "exclusive remedy" provision, KRS 342.690(1) immunizes an employer who secures the payment of workers' compensation benefits from tort liability for an employee's work-related accident and limits the employer's liability to worker's compensation benefits. The statute includes within the term "employer" a " 'contractor' covered by subsection (2) of KRS 342.610," without regard to whether the subcontractor has actually secured workers' compensation coverage. As a consequence, KRS 342.690(1) immunizes a contractor from tort claims by its subcontractors' employees as well as by its own employees because it extends an employer's immunity to its carrier and to all of the employer's employees, officers, or directors unless unprovoked physical aggression by the party seeking immunity caused the worker's injury.

KRS 342.610(2) holds a contractor liable for the payment of compensation to its uninsured subcontractor's employees and permits the contractor to recover the amount paid from the uninsured subcontractor. As applicable to these facts, the term contractor includes a business that contracts with another to perform work of a kind that is a regular or recurrent part of the business's work.

KRS 342.700(1) permits an employee who sustains a work-related injury "under

2. *Pearson ex rel. Trent v. National Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky.2002).

3. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

circumstances creating in some other person than the employer a legal liability to pay damages" to receive workers' compensation benefits from the employer and proceed against the other person to recover damages, in which case the employer has a right of subrogation. KRS 342.700(2) holds a contractor liable for paying workers' compensation to its subcontractor's employee if the subcontractor fails to do so.

KRS 342.615 concerns employee leasing companies and temporary help services.

The parties do not dispute that temporary workers performed work that was a regular and recurrent part of Mid–America's business. Thus, Mid–America was a contractor under KRS 342.610(2) and Labor Ready was a subcontractor.[4] As a contractor, Mid–America had potential workers' compensation liability for injuries to Labor Ready's temporary workers and KRS 342.690(1) would grant Mid–America immunity if a temporary worker were to file a tort claim. As a subcontractor, Labor Ready had no potential workers' compensation liability to Mid–America's employees under KRS 342.610(2).

## IMMUNITY

The Workers' Compensation Act is social legislation, a product of compromises by workers and employers. Workers agree to forego common law remedies in exchange for statutory benefits awarded without regard to fault. Employers agree to pay such benefits and to forego common law defenses in exchange for immunity from tort liability.

Like KRS 342.700(1), Section 9 of the 1916 Act permitted an injured worker to collect workers' compensation benefits and also recover damages for the negligence of "some other person than the employer," in which case the worker's employer had a right of subrogation.[5] At its inception, the Act based immunity from tort liability solely on the potential for workers' compensation liability. Like KRS 342.690(1) and KRS 342.610(2), Sections 3 and 10 of the 1916 Act required a contractor to assume the workers' compensation liability of an uninsured subcontractor and immunized both from tort claims by the subcontractor's employees.[6]

Early cases involving exclusive remedy immunity focus on the meaning of the term "some other person than the employer." The court explained in *McEvilly v. L.E. Myers Co.*[7] that a principal contractor is immune from a tort claim by a subcontractor's employee if both are operating under the Act and that the term refers to a third party with "no connection to the general work being performed and whose negligence is wholly disconnected from that work."[8] Relying on *McEvilly*, the

4. *Technical Minerals*, 934 S.W.2d 266, relied on *Fireman's Fund Insurance Company v. Sherman & Fletcher*, 705 S.W.2d 459 (Ky. 1986), with regard to the definition of the term "contractor." It overruled *M.J. Daly Co. v. Varney*, 695 S.W.2d 400 (Ky.1985), implicitly insofar as the *Daly* court relied on a previous definition of the term to find that Daly did not have a contractor/subcontractor relationship with the temporary employee's direct employer. It did not disturb the *Daly* court's analysis of whether the loaned servant doctrine provided other grounds for consider-

ing Daly to be the temporary employee's employer.

5. *Book v. City of Henderson*, 176 Ky. 785, 197 S.W. 449 (1917).

6. *McEvilly v. L.E. Myers Co.*, 211 Ky. 31, 276 S.W. 1068, 1071(1925).

7. *Id.*

8. *See also Simmons v. Clark Construction Company*, 426 S.W.2d 930 (Ky.1968); *Jen-*

court extended tort immunity to workers employed by the same employer in *Miller v. Scott.*[9] The legislature ratified the decision when revising Chapter 342 in 1972 and enacting KRS 342.690(1), which extends an employer's immunity to its employees.[10] Although workers bear no workers' compensation liability, most states view co-employee immunity as being part of the quid pro quo for accepting the Workers' Compensation Act.[11]

The court has refused to extend employer immunity further except in instances where the loaned servant (*i.e.*, loaned employee) doctrine applies. Of particular interest in the present case is *Dillman v. John Diebold & Sons Stone Co.,*[12] which was decided under an early version of the Act. In *Dillman* the court refused to limit the meaning of "some person other than the employer" in order to immunize a subcontractor's employee from a tort claim by the principal contractor's employee. Distinguishing *McEvilly*, the court rejected explicitly an argument that the exclusive remedy provision treated all employees working on the same job equally. The court determined that a subordinate contractor remained "some person other than the employer" whom the principal contractor and its employees could sue if injured unless the statute providing for contractor/subcontractor liability took the right of action away. The court explained that it did not. Noting that the statute exposed an up-the-ladder contractor to potential liability for workers' compensation benefits

in exchange for depriving a subcontractor's employees of the right to a tort claim but gave the principal contractor's employees no right of compensation from its subcontractors, the court refused to construe the statute "as taking away their right to sue and putting nothing in its place." [13]

The court refused to limit the meaning of "some person other than the employer" more recently in *Peters v. Radcliff Ready Mix Concrete, Inc.,* holding that the employees of one subcontractor were not immune from tort claims by the employees of another subcontractor.[14] Relying on *Dillman,* the *Peters* court reasoned that the subcontractors had no contractor/subcontractor relationship although they worked on the same project and that *McEvilly* and *Miller* should be limited to their facts.

The views expressed in *Dillman* and *Peters* are consistent with those found in Professor Larson's treatise. *Larson's, supra* at § 111.04(2) explains that "the great majority of jurisdictions" consider a subcontractor and its employees to be third parties whom the principal contractor and its employees may sue in tort. The reason for refusing to grant immunity is that a subcontractor has no potential liability to the principal contractor or its employees under the workers' compensation statutes. In other words, an employer's immunity follows its liability for workers' compensation benefits.

Enacted after *Dillman* and *Peters,* KRS 342.690(1) extends an employer's immunity

*nings v. Vincent's Adm'x.,* 284 Ky. 614, 145 S.W.2d 537 (1940).

**9.** 339 S.W.2d 941 (Ky.1960). *See also Jackson v. Hutchinson,* 453 S.W.2d 269 (Ky.1970); *Black v. Tichenor,* 396 S.W.2d 794 (Ky.1965).

**10.** 1972 *Acts,* ch. 78, § 9. The amendment also immunized the employer's workers' compensation insurance carrier and all officers and directors.

**11.** Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 111.03 (2008).

**12.** 241 Ky. 631, 44 S.W.2d 581 (1931).

**13.** *Id.* at 583.

**14.** 412 S.W.2d 854 (Ky.1967). *See also R.E. Gaddie, Inc. v. Evans,* 394 S.W.2d 118(Ky.1965) (state highway inspector's work was not such an integral part of project as to

to its employees and deems a contractor as defined in KRS. 342.610(2) to be an employer "whether or not the subcontractor has ... secured the payment of compensation." At issue presently is whether KRS 342.690(1) overruled *Dillman* legislatively and extended a contractor's immunity to its subcontractor and the subcontractor's employees. We conclude that it did not.

■ Since the 1972 revision of the Act, KRS 342.690(1) has deemed a contractor covered by KRS 342.610(2) to be an employer "[f]or the purposes of this section." The apparent purpose of the provision is to codify *McEvilly* and its progeny by extending immunity to an employer's employees as part of the quid pro quo for workers' compensation coverage and to up-the-ladder contractors in exchange for providing coverage. As in *Dillman,* no statute holds a subcontractor liable to pay compensation to a contractor's employees. Nor does any statute deem a subcontractor to be their employer or immunize the subcontractor and its employees from their tort claims. Furthermore, Mid–America had no potential workers' compensation liability to Hudson in the present action because he was not the injured party. Thus, KRS 342.690(1) did not deem Mid–America to be his employer for the purposes of this action and Johnston was not his co-employee.

## LOANED EMPLOYEE DOCTRINE

■ KRS 342.640(1) bases a worker's status as an employee on the existence of an express or implied contract of hire between the worker and putative employer. The loaned employee doctrine permits the direct employee of one business (general employer) to be considered an employee of another business (special employer) and, thus, a co-employee of its employees if three basic tests of an employment relationship are present: 1.) an express or implied contract of hire exists between the employee and the special employer; 2.) the employee performs work for the special employer; and 3.) the special employer has the right to control the work that the employee performs.[15] The doctrine was instituted to protect injured workers and does not permit a special employer to be thrust upon them against their will or without their knowledge, thereby depriving them of the right to sue for damages.[16] *Allied Machinery, Inc. v. Wilson*[17] noted, however, that the more recent cases [18] had broadened the scope of a putative employer's immunity by focusing on its right to control the details of the work being performed at the time of the injury rather than on the existence of a contractual relationship with injured worker.

In the present case, a temporary worker and his direct employer (a subcontractor) rely on the doctrine to defend against a tort claim by the contractor's permanent employee. Hudson and Labor Ready assert that he was loaned to Mid–America and was immune from Johnston's tort claim because he was Mid–America's employee and her co-employee. We disagree.

Professor Larson's treatise notes that temporary employees comprise between one and two percent of the American labor force and that the closest loaned employee cases involve a general employer whose very business is to furnish equipment and

make him a fellow employee of a subcontractor's employees).

**15.** *Larson's, supra* at § 67.01.

**16.** *Rice v. Conley,* 414 S.W.2d 138, 141 (Ky. 1967). *See also Larson's, supra,* § 67.02(1).

**17.** 673 S.W.2d 728 (Ky.App.1984).

**18.** *See United Engineers and Constructors, Inc. v. Branham,* 550 S.W.2d 540 (Ky.1977); *Brown v. Tennessee Gas Pipeline Co.,* 623 F.2d 450 (C.A.Ky.1980). *See also Beaver v. Oakley,* 279 S.W.3d 527 (Ky.2009).

employees to others.[19] Although most cases consider the worker to be the employee of the special employer when the general employer arranges for labor only, some jurisdictions address the question by statute.[20] Kentucky is among those jurisdictions.

Enacted in 1996, shortly after the court rendered the decision in *Technical Minerals*,[21] KRS 342.615(1) creates two classes of workers (leased employees and temporary workers) and two classes of employers (employee leasing companies and temporary help services). Employee leasing arrangements are arrangements in which two or more entities allocate employment responsibilities.[22] KRS 342.615(4) requires the lessee to secure workers' compensation coverage for all leased employees or contract with the employee leasing company to do so, and it requires the premium to be based on the lessee's exposure and experience. A temporary help service hires its own employees and assigns them to clients for finite periods to supplement the client's workforce during special situations such as employee absences, temporary skill shortages, and seasonal workloads.[23] KRS 342.615(5) states explicitly that the temporary help service "shall be deemed" a temporary worker's employer and "shall be subject" to Chapter 342.

Although KRS 342.615(4) may permit a leased employee to be viewed as being the lessee's employee rather than the employee leasing company's employee, KRS 342.615(5) does not permit a temporary employee to be viewed as being the client's employee. Hudson clearly was a temporary worker rather than a leased employee

and KRS 342.316(5) clearly required him to be considered Labor Ready's employee rather than Mid–America's employee. Thus, he was not Johnston's co-employee.

## INDEMNITY

Noting that Mid–America has already paid workers' compensation benefits, Labor Ready and Hudson assert that Mid–America may be forced to compensate Johnston twice if her civil suit proceeds. They base the argument on common law indemnity and on the terms of Labor Ready's work ticket. We find no merit in either portion of the argument.

 The common law right of indemnity exists when two parties are liable to an injured party but one is less culpable.[24] Labor Ready and Hudson assert that Hudson's negligence may be attributed to Mid–America, which had the sole right and obligation to supervise him. In that case, Labor Ready would be able to seek indemnification from Mid–America and, as a consequence, Mid–American could be forced to indemnify Labor Ready for damages in addition to the workers' compensation benefits that it has already paid to Johnston. We disagree because KRS 342.690(1) provides otherwise.

KRS 342.690(1) states, in pertinent part, that:

> The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employee of such employer arising out of and in the course of employment and caused by a breach of any

**19.** *Larson's, supra,* § 67.05(3).

**20.** *Id.*

**21.** 934 S.W.2d 266.

**22.** KRS 342.615(1)(d).

**23.** KRS 342.615(1)(f).

**24.** *Union Carbide Corporation v. Sweco, Inc.,* 610 S.W.2d 932, 934 (Ky.App.1980), citing *Brown Hotel Co. v. Pittsburgh Fuel Co.,* 311 Ky. 396, 224 S.W.2d 165 (1949).

duty or obligation owed by such employer to such other shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter on account of such injury or death, unless such other and the employer by written contract have agreed to share liability in a different manner.

KRS 342.690(1) limits an employer's liability to indemnify a third-party tortfeasor to the amount of workers' compensation benefits that the employer must pay.[25] In the event a jury finds that Hudson's negligence helped to cause Johnston's injuries, KRS 342.690(1) limits Mid–America's obligation to indemnify Labor Ready to the amount of workers' compensation benefits that it paid unless the parties have contracted otherwise.

Another argument is that the work ticket amounts to a contract in which Mid–America agreed to indemnify Labor Ready for injuries caused by the negligence of its employees. Labor Ready and Hudson assert that the indemnification provision would require Mid–America to compensate Johnston twice for her injury, which is contrary to Chapter 342.

As the Court of Appeals pointed out, even if the work ticket were found to constitute a contract, its language does not require Mid–America to pay Johnston anything. Moreover, KRS 342.700(1) prohibits her from recovering both in tort and under Chapter 342. KRS 342.690(1) clearly permits employers such as Labor Ready and Mid–America to agree to share an employer's liability for damages in a manner different from that set forth in the statute, provided they do so by written contract. Thus, we are not convinced that a contractual indemnity provision must be viewed as being abhorrent to Chapter 342.

The decision of the Court of Appeals is affirmed and this matter is remanded for further proceedings.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. ABRAMSON, J., not sitting.

25. *Capps v. Herman Schwabe, Inc.,* 628 F.Supp. 1353, 1359 (W.D.Ky.1986). *See also Burrell v. Electric Plant Bd. of City of Franklin, Ky.,* 676 S.W.2d 231 (Ky.1984), overruled on other grounds in *Dix & Associates Pipeline Contractors, Inc. v. Key,* 799 S.W.2d 24 (Ky. 1990).