**WEBSTER COUNTY COAL
CORPORATION,**
Appellant,

v.

Jimmie D. LEE; Honorable John B.
Coleman, Administrative Law Judge;
and Workers' Compensation Board,
Appellees.

and

Jimmie D. Lee, Cross–Appellant,

v.

Webster County Coal Corporation;
Honorable John B. Coleman, Adminis-
trative Law Judge; and Workers'
Compensation Board, Cross–Appel-
lees.

Nos. 2002–CA–001123–WC,
2002–CA–001314–WC.

Court of Appeals of Kentucky.

Aug. 29, 2003.

As Modified Oct. 10, 2003.

James G. Fogle, Louisville, KY, for Appellant/Cross–Appellee.

Dick Adams, Madisonville, KY, for appellee/cross-appellant, Jimmie Lee.

Before JOHNSON and KNOPF, Judges; and MILLER, Senior Judge.[1]

## OPINION

JOHNSON, Judge.

Webster County Coal Corporation has petitioned for review of an opinion of the Workers' Compensation Board entered on April 24, 2002, which affirmed an opinion and award by the Administrative Law Judge that determined Jimmie D. Lee to be permanently and totally disabled due to an occupational hearing loss. Lee has cross-petitioned for review of that part of the Board's opinion that affirmed the ALJ's denial of his claim for income benefits due to coal workers' pneumoconiosis. Having concluded that the Board has not overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice,[2] we affirm.

Lee, who was born on November 12, 1944, has completed only the seventh grade and has no specialized or vocational training. Lee primarily spent his working life as a shooter in the underground coal mining industry. A shooter goes to the face of the coal after it has been cut and drilled, loads the holes with explosives, and sets off the charge. Lee worked in the mining industry for approximately 33 1/2 years for multiple employers. Lee's job exposed him to both large amounts of coal dust and loud noise. Lee was furnished with dust masks and hearing protection, but he did not wear this protective gear all the time. Lee became employed by Webster County Coal in August 1979, where he continued to be exposed to the hazards of coal workers' pneumoconiosis and loud noise. Lee alleged that he sustained an injury due to hearing loss on December 8, 2000.

Medical evidence concerning Lee's hearing loss consisted of reports from Dr. Ian Windmill, who performed an evaluation pursuant to KRS [3] 342.315, and Dr. Mitchell P. Kaye, who examined Lee at his attorney's request. Dr. Windmill received from Lee a 20–year history of work-related noise exposure. He noted that Lee had access to hearing protection but was unable to use it on a full-time basis. Dr. Windmill further indicated that Lee wore bilateral hearing aids he had received five years earlier and that he was getting some good benefit from them. Dr. Windmill interpreted an audiogram as revealing a bilateral moderate to severe sensory neural hearing loss. He stated that Lee had a greater hearing loss than expected based on a gentleman of 56 years of age, but that he had a pattern that was consistent with work-related noise induced hearing loss.

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–88 (1992).

3. Kentucky Revised Statutes.

Objective and behavioral test results were consistent with this pattern. It was likely that a small portion of Lee's hearing loss was due to the aging process, but the majority was consistent with noise exposure.

Pursuant to the American Medical Association's (AMA) *Guides to the Evaluation of Permanent Impairment,* Dr. Windmill assessed an 18% permanent functional impairment to the body as a whole due to Lee's hearing loss. He indicated that Lee should wear hearing protection devices whenever exposed to loud noise and that he did not retain the physical capacity to return to the type of work he performed at the time of injury. Dr. Windmill indicated that since Lee used hearing amplification and since he received adequate benefit from the hearing aids, no other recommendations were made. He suggested that Lee should continue to use hearing amplification, as it was likely the best alternative in terms of treatment and overcoming Lee's communicative difficulties.

Dr. Kaye evaluated Lee on April 25, 2001. He took note of Lee's work history as a shooter in the mines and that at times Lee had not used hearing protection. Under the AMA *Guides,* audiometric studies indicated a 16% permanent functional impairment to the body as a whole for binaural hearing impairment.

Dr. Kaye indicated that Lee's hearing loss was irreversible and likely progressive. He also noted that Lee had poor speech discrimination, which would make normal understanding difficult or impossible, despite heavy amplification. He further noted that Lee had tinnitus.[4] Dr. Kaye considered Lee's hearing loss noise-induced and found particularly impressive Lee's negative family history for hearing loss.

In determining Lee's hearing loss claim, the ALJ described the evidence offered by Lee as "extremely powerful." He relied on the medical testimony of Dr. Windmill, who assessed an 18% permanent functional impairment as a result of Lee's hearing loss and opined that Lee lacked the capacity to return to his past work. Based on this 18% permanent functional impairment and the factors of permanent total disability as defined in KRS 342.0011(11)(c),[5] as well as the definition of work found in KRS 342.0011(34),[6] the ALJ found that Lee was permanently and totally disabled due to his hearing loss. The ALJ indicated that since Lee was 56 years old, had only a seventh grade education, had no specialized or vocational training, had spent his entire work history as a shooter in the underground coal mining industry, and had suffered a significant hearing impairment, that he met the definition for permanent total disability based on his

4. Tinnitus is a sound in the ears, such as buzzing, ringing, or whistling, caused by a defect in the auditory nerve.

5. KRS 342.0011(11)(c) provides as follows: "Permanent total disability" means the condition of an employee who, due to an injury, has a permanent disability rating and has a complete and permanent inability to perform any type of work as a result of an injury, except that total disability shall be irrebuttably presumed to exist for an injury that results in:
1. Total and permanent loss of sight in both eyes;
2. Loss of both feet at or above the ankle;
3. Loss of both hands at or above the wrist;
4. Loss of one (1) foot at or above the ankle and the loss of one (1) hand at or above the wrist;
5. Permanent and complete paralysis of both arms, both legs, or one (1) arm and one (1) leg;
6. Incurable insanity or imbecility; or
7. Total loss of hearing.

6. KRS 342.0011(34) provides: " 'Work' means providing services to another in return for remuneration on a regular and sustained basis in a competitive economy."

hearing loss alone. The ALJ found that Lee "would be unable to obtain employment outside the coal mining industry in light of his age, education and past work experience in combination with his restricted level of hearing." The ALJ rejected Webster County Coal's argument that a finding of total disability based on hearing loss alone was prohibited by KRS 342.730(1)(a) and KRS 342.7305.

In its petition for review, Webster County Coal argues that the ALJ erred as a matter of law in applying KRS 342.7305 to the undisputed facts concerning Lee's hearing loss claim. Webster County Coal claims the ALJ erred because he awarded Lee total disability income benefits based upon KRS 342.730(1)(a), rather than limiting the award to permanent partial disability as required by KRS 342.7305. Webster County Coal contends that KRS 342.7305 limits Lee's hearing loss disability benefits to an award of income benefits pursuant to KRS 342.730(1)(b) based upon an 18% permanent functional impairment to the body as a whole, with the 1.5 multiplier since Lee could not return to his previous work.

KRS 342.730(1)(a) provides as follows:

(1) Except as provided in KRS 342.732,[7] income benefits for disability shall be paid to the employee as follows:

  (a) For temporary or permanent total disability, sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage but not more than one hundred percent (100%) of the state average weekly wage and not less than twenty percent (20%) of the state average weekly wage as determined in KRS 342.740 during that disability. *Nonwork-related impairment and conditions compensable under KRS 342.732 and hearing loss covered in KRS 342.7305 shall not be considered in determining whether the employee is totally disabled for purposes of this subsection* [emphasis added].

KRS 342.7305(2) provides:

Income benefits payable for occupational hearing loss shall be as provided in KRS 342.730, except income benefits shall not be payable where the binaural hearing impairment converted to impairment of the whole person results in impairment of less than eight percent (8%). No impairment percentage for tinnitus shall be considered in determining impairment to the whole person.

Accordingly, income benefits are payable for occupational hearing loss as provided under KRS 342.730, as long as the whole person impairment results in no less than an 8% impairment and no impairment percentage for tinnitus is considered.

In finding Lee permanently and totally disabled, the ALJ reasoned as follows:

In making this determination, I have considered that K.R.S. 342.730(1)(a), which provides that a hearing loss covered in K.R.S. 342.7305 shall not be considered in determining whether the employee is totally disabled for purposes of that subsection. A reading of that statute in combination with K.R.S. 342.0011 makes it clear that it is meant that a combination of a hearing loss cannot be added to another injury claim to create a total disability rather than a permanent partial disability under K.R.S. 342.730 and a partial disability under K.R.S. 342.7305. However, in this instance, my finding is that the hearing loss disability under K.R.S. 342.7305 is, in and of [itself], permanently and totally disabling.

7. KRS 342.732 pertains to coal workers' pneumoconiosis.

Webster County Coal argues that KRS 342.730(1)(a) provides that an employee cannot be found permanently and totally occupationally disabled due to an occupational hearing loss as provided in KRS 342.7305. Webster County Coal interprets KRS 342.730(1)(a) as a limitation on the ALJ finding a permanent total disability based on any hearing loss other than a total loss of hearing as provided in KRS 342.0011(11)(c) 7.

In affirming the ALJ's award of permanent total disability for Lee's partial hearing loss, the Board stated:

> We believe the provision of KRS 342.730(1)(a) upon which Webster County bases its arguments merely provides that an occupational hearing loss cannot be used to "Teledyne"[8] another permanent partial impairment rating into an award for total occupational disability benefits. Clearly, a claimant may be awarded total occupational disability benefits for coal workers' pneumoconiosis under KRS 342.732. Likewise, it is clear KRS 342.730(1)(a) cannot be read to exclude total occupational disability awards for KRS 342.7305. The occupational hearing loss statute simply provides a floor of 8% impairment. It does not set a ceiling of a partial award. Furthermore, if Webster County's reasoning were applied to KRS 342.730(1)(e),[9] occupational hearing loss could not be used for determining the extent of disability or duration of benefits whatsoever in a permanent partial award.

■ We agree with the Board's analysis concerning the interpretation of KRS

342.730(1)(a) and 342.7305. There are several sound reasons which support this result. First, an employee can be awarded total occupational disability benefits for coal workers' pneumoconiosis under KRS 342.732 even though that section is also excluded by KRS 342.730(1)(a) from being used to "Teledyne" another permanent partial impairment rating into an award for total occupational disability benefits.

Second, KRS 342.0011(11)(c)7. specifically lists "[t]otal loss of hearing" as a condition for which total disability shall be irrebuttably presumed. The statutory interpretation urged by Webster County Coal would produce the unreasonable result that a disability caused by a loss of hearing would be the only work-related disabling condition that an employee could suffer which would prohibit the consideration by the ALJ of disability factors listed in *Osborne v. Johnson,*[10] and the statutes. This would result in loss of hearing being the only medical condition for which an employee could receive permanent total disability benefits only if the employee met the statutory condition for an irrebuttable presumption of total disability. We can discern no sound public policy for the Legislature creating such an exception for a permanent total disability resulting from loss of hearing.

Third, not only is KRS 342.7305 listed in KRS 342.730(1)(a) along with KRS 342.732, but also included is "[n]onwork-related impairment[.]" The Legislature's exclusion of a nonwork-related impairment from consideration by the ALJ in determining whether an employee suffers a permanent

---

**8.** *Teledyne–Wirz v. Willhite,* Ky.App., 710 S.W.2d 858 (1986)(superceded by statute as stated in *McNutt Construction v. Scott,* Ky., 40 S.W.3d 854, 858 (2001)).

**9.** KRS 342.730(1)(e) provides: "For permanent partial disability, impairment for non-work-related disabilities, conditions previous-

ly compensated under this chapter, conditions covered by KRS 342.732, and hearing loss covered in KRS 342.7305 shall not be considered in determining the extent of disability or duration of benefits under this chapter."

**10.** Ky., 432 S.W.2d 800 (1968).

total disability indicates to this Court that the Legislature enacted this provision in KRS 342.730(1)(a) to prohibit the use of such a disability to "Teledyne" another permanent partial impairment rating into an award for total occupational disability benefits.

Fourth, the argument propounded by Webster County Coal is circular. While the argument recognizes that KRS 342.730(1)(a) sets forth the method for calculating permanent total disability benefits except for coal workers' pneumoconiosis as provided in KRS 342.732, it attempts to limit any findings of permanent total disability under KRS 342.732 for loss of hearing based on KRS 342.7305, even though KRS 342.7305(2) in turn provides that "[i]ncome benefits payable for occupational hearing loss shall be provided in KRS 342.730[.]" We believe this argument is circular because KRS 342.730(1)(a) refers to KRS 342.7305 which in turn refers to KRS 342.730.

Fifth, the statutory scheme relied upon by Webster County Coal fails to include the language necessary to produce the result that it proposes. If the Legislature had intended to prohibit a finding of permanent total disability based on factors other than a total loss of hearing, it could have clearly included the statutory language prohibiting such an award.[11]

▬▬ Finally, we are required to interpret the workers' compensation statutes in a manner that is consistent with their beneficent purpose.[12] To deny a severely disabled worker permanent total disability benefits for any loss of hearing short of a total loss of hearing could produce the unreasonable result that a worker who had lost 99% of his hearing could not be found to be permanently and totally disabled regardless of the disability factors in *Osborne* and the statutes since a 99% loss of hearing is not a total loss of hearing. When there is an ambiguity in the workers' compensation statutory scheme, it must be interpreted in a way that furthers the social policy of the Act to provide benefits for the disabled worker.[13]

Lee has cross-petitioned for review of the Board's affirmance of the ALJ's denial of income benefits due to coal workers' pneumoconiosis. The ALJ concluded that although Lee suffered from coal workers' pneumoconiosis, his spirometric test values were above 80% of predicted based on Dr. Robert Powell's testing. The ALJ also noted that Dr. Antara Mallampalli indicated that based on arterial blood gas studies Lee was impaired; however, it was not shown that the spirometric tests were not valid. Therefore, the ALJ did not rely on the alternative method for determining respiratory impairment as provided in KRS 342.732(3); and the ALJ concluded that Lee was not entitled to income benefits pursuant to KRS 342.732(1)(a), (b), or (c).

---

11. *Commonwealth v. Simmons*, Ky.App., 753 S.W.2d 872, 873 (1988).

12. "We approach the decision under the influence of the remedial principle of workmen's compensation and the development and progress of legislation to accomplish its humane and beneficent purpose." *Dick v. International Harvester Co.*, Ky., 310 S.W.2d 514, 515 (1958) (citing *Consolidation Coal Company's Receivers v. Patrick*, 254 Ky. 671, 72 S.W.2d 51 (1934); and *Adams v. Bryant*, Ky., 274 S.W.2d 791 (1955)).

13. " 'In interpreting such an act all presumptions will be indulged in favor of those for whose protection the enactment was made, and who have by the terms of the act and by their own voluntary agreement been deprived of the enforcement of their rights in the courts of this state.' *Workmen's Compensation Board v. U.S. Coal & Coke Co.*, 196 Ky. 833, 245 S.W. 900, 902." *Consolidation Coal Co., supra* at 678, 72 S.W.2d 51.

Lee claims that the ALJ erred as a matter of law by not finding that he had a respiratory impairment based on what he claims to be the more reliable arterial blood gas studies performed by Dr. Mallampalli. However, since Lee failed to show that the spirometric tests provided were not valid, the alternative method for determining respiratory impairment provided in KRS 342.732(3) was not available. Since the pulmonary studies performed by Dr. Powell had both an FVC and FEV1 of above 80% of predicted, Lee was not entitled to income benefits under KRS 342.732(1)(a), (b) or (c).[14]

■ As the claimant, Lee had the burden of proof and the risk of persuading the ALJ.[15] Since Lee was unsuccessful before the ALJ, the question on appeal is "whether the evidence was so overwhelming, upon consideration of the entire record, as to have compelled a finding in [his] favor." [16] For the evidence relied upon by Lee to be compelling, the evidence must be so overwhelming that no reasonable person could reach the conclusion of the ALJ.[17] The evidence offered by Lee to support the use of the alternative method under KRS 342.732(3) was not so overwhelming as to compel a finding in favor of Lee on his coal workers' pneumoconiosis claim for income benefits.

Based on the foregoing reasons, the Board is affirmed on both the petition for review and the cross-petition.

ALL CONCUR.

---

14. Lee was awarded medical benefits and that award was not appealed.

15. *Snawder v. Stice*, Ky.App., 576 S.W.2d 276, 279 (1979).

16. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735, 736 (1984).

17. *REO Mechanical v. Barnes*, Ky.App., 691 S.W.2d 224, 226 (1985).