KENTUCKY UNINSURED
EMPLOYERS' FUND

v.

Julian HOSKINS; Kentucky Employers' Mutual Insurance Company; Beacon Enterprises, Inc.; Four Star Transportation, Inc.; Better Integrated Systems, Inc.; Workers Compensation Board; and Honorable R. Scott Borders, Administrative Law Judge, Appellees.

No. 2012–SC–000008–WC.

Supreme Court of Kentucky.

Oct. 9, 2014.

Dennis Stutsman Assistant Attorney General Uninsured Employers' Fund, Counsel for Appellant.

Alan Steven Rubin, Counsel for Appellee Julian Hoskins.

Barry Lewis, Lewis and Lewis Law Offices, Counsel for Appellee Kentucky Employers' Mutual Insurance Company.

Terrance J. Janes, Counsel for Appellee Beacon Enterprises, Inc. and Better Integrated Systems, Inc.

Not Represented by Counsel, Counsel for Appellee Four Star Transportation, Inc.

Dwight Taylor Lovan Executive Director Office Of Workers' Claims, Counsel for Appellee Workers Compensation Board.

Opinion of the Court by Justice VENTERS.

This is a workers' compensation appeal in which we address for the first time the relationship between the common law loaned servant doctrine and the employee leasing arrangements that are the subject of KRS 342.615. Appellant, Uninsured Employers' Fund (UEF), appeals from a decision of the Court of Appeals which, consistent with the Workers' Compensation Board (the Board), held that Appellee, Kentucky Employers' Mutual Insurance (KEMI), was not the insurance carrier at risk for injuries sustained by Julian Hoskins in the course of his employment with Four Star Transportation, Inc. (Four Star). KEMI was the workers' compensation carrier for Beacon Enterprises, Inc., (Beacon Enterprises) at the time Hoskins was injured. Beacon Enterprises is an employee leasing company. The UEF contends that Hoskins was covered by Beacon Enterprises' policy with KEMI; KEMI argues that he was not.

The Board and the Court of Appeals concluded that Hoskins was not covered by the KEMI policy upon application of the "loaned servant doctrine," a well-established common law master-servant concept holding, *inter alia*, that a servant cannot be deemed to be an employee of a master of whom he has no knowledge. Hoskins believed that his employer was Four Star. He was unaware that, by virtue of an employee leasing agreement between Four Star and Beacon Enterprises, he was for

some purposes a Beacon Enterprises employee. The Court of Appeals and the Board reasoned that under the loaned servant doctrine Hoskins could not be an employee of Beacon Enterprises for workers' compensation purposes, and thus they concluded that the KEMI policy did not provide coverage for his injury. Consequently, that liability was shifted to the UEF. In contrast with that conclusion, the Administrative Law Judge (ALJ) had determined that Hoskins was a properly constituted "leased employee" pursuant to KRS 342.615 who was validly covered under the KEMI policy issued to "employee leasing company" Beacon Enterprises, thereby absolving the UEF from coverage.

As grounds for relief, the UEF argues that the ALJ correctly ruled that Hoskins's unawareness of the Four Star–Beacon Enterprises relationship did not destroy the employee-employer relationship created as a result of the employee leasing agreement, and thus his lack of knowledge of it did not relieve KEMI of its obligation for his workers' compensation protection. The question thus presented is one of first impression. For the reasons set forth below, we now conclude that an "employee leasing arrangement" as defined by KRS 342.615 differs substantially from a loaned servant situation, and therefore the common law principle of the loaned servant doctrine that a servant may not be considered an employee of an employer of whom he has no knowledge does not apply in the context of an "employee leasing arrangement." [1]

Having reached its decision by focusing upon the common law loaned servant doctrine, the Court of Appeals did not reach other arguments raised by the parties in

---

1. This Court initially rendered an opinion in this case on April 25, 2013 affirming the Court of Appeals. However, on December 19, 2013 we granted a petition for rehearing filed by the UEF pursuant the CR 76.32(*l*)(b), and we set the case for oral arguments to reconsider the issues presented. This opinion is the result of that reconsideration.

support of, and in objection to, the Board's decision. We therefore remand this case to the Court of Appeals for its further consideration of the remaining issues which, in light of our determination, are now essential to the resolution of this matter.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The controversy in this case arose after Hoskins, a long-distance truck driver, suffered a work-related injury on January 31, 2008. According to the evidence, Four Star, a trucking company, hired Hoskins to work as a truck driver out if its Louisville, Kentucky depot. Unbeknownst to Hoskins, however, Four Star had configured its workforce pursuant to an employee leasing arrangement with Better Integrated Systems, Inc. (Better Integrated), a company affiliated with Beacon Enterprises by some degree of common ownership and management.[2] Beacon Enterprises and Better Integrated are both employee leasing companies servicing clients, primarily in the trucking industry.

Under the leasing arrangement, Hoskins and other members of Four Star's workforce were, for purposes of managing pertinent payroll responsibilities, such as tax withholdings and obtaining workers' compensation insurance, deemed to be employees of Better Integrated. Consequently, as noted in the evidence, although the only employer he knew was Four Star, Hoskins's paycheck was issued by Better Integrated.

The arrangement then became more complex. Better Integrated "leased" Hoskins's employment responsibilities to its affiliated company, Beacon Enterprises.[3] It appears that the principal reasons for this transaction were that Beacon Enterprises had other employee leasing clients in Kentucky and could, through its KEMI policy, satisfy the workers' compensation requirements of Four Star's workforce, and also because Better Integrated was not authorized to operate as an employee leasing company in Kentucky pursuant to KRS 342.615. Unraveling the details of the matter has been made far more difficult because the parties either failed to maintain written documents evidencing the inter-corporate transactions or they failed to introduce them into the record.

Under this complex arrangement, Four Star, as the "lessee" of its own workforce, continued to direct and oversee Hoskins's work activities, just as any master in a conventional employer-employee relationship. Hoskins remained unaware that his employment with Four Star was subject to the assignments and employee leasing agreements between Four Star, Better Integrated, and Beacon Enterprises (and perhaps Beacon Industrial).

Four Star did not maintain its own workers' compensation policy covering Hoskins because its employee leasing contract shifted the primary responsibility for such coverage to Better Integrated. KRS 342.615 expressly provides that the "lessee" (Four Star) under such an ar-

---

**2.** The ownership of Better Integrated, Beacon Enterprises, and Beacon Industrial all consist of members from one family, and given the dearth of documentation for the transaction involved, it would appear likely that some, if not all, were not arms-length transactions.

**3.** There is a suggestion in the record that as an intermediate step, Better Integrated first "leased" Hoskins to Beacon Industrial Staff-

ing, Inc., which in turn "leased" him to its affiliated company Beacon Enterprises. However in their discussions of the transactions the parties generally do not refer to this additional assignment. Any intermediate role Beacon Industrial Staffing may have played is immaterial to our analysis and so we will ignore it.

rangement may "fulfill [its workers' compensation insurance] responsibility by contracting with an employee leasing company to purchase and maintain the required insurance policy." What remains at issue is whether, as matters of law and fact, the responsibility for Hoskins's workers' compensation coverage was properly transferred from Four Star to Better Integrated, then to Beacon Enterprises, so as to bring the liability for his benefits under coverage of Beacon Enterprises' KEMI policy.

KEMI maintains that its policy with Beacon Enterprises was never implicated because Hoskins's lack of knowledge of the employee leasing arrangements means that neither Beacon Enterprises nor Better Integrated could have had a "contract of hire" with him; that his only "contract of hire" was with Four Star, and so Hoskins was never one of Beacon Enterprises' leased employees. And, even if he was, KEMI contends for other reasons that its policy did not apply to him.[4]

The UEF asserts that at the time of Hoskins's injury, even though his salary was being paid by Better Integrated, Four Star's primary responsibility for his workers' compensation insurance had been validly transferred from Better Integrated to Beacon Enterprises. The UEF argues that as the workers' compensation carrier for Beacon Enterprises, KEMI is liable for Hoskins's workers' compensation benefits. As relevant to this issue, the ALJ made the following findings:

> The Administrative Law Judge finds that KEMI was aware that Beacon Enterprises was an employee leasing company, and had two offices in Louisville,

one for Rush Trucking, and one where Four Star Transportation was located. In addition, it appears that KEMI received additional premiums as a result of the adding of this additional company. This is reflected by the fact that the premiums for Beacon Enterprises increase [sic] from $299,635.62 to $749,001.72 for the policy in question. It appears to the undersigned Administrative Law Judge that KEMI did not investigate the addition of a second address in Louisville fully to determine if the appropriate documentation was submitted to the Department of Workers' Claims. However, they were willing to accept the premium and write the policy. It was not until after the January 31, 2008, work-related injury of Mr. Hoskins that KEMI corresponded to Beacon Enterprises claiming surprise that they were leasing employees to other entities than Rush Trucking. This is totally inconsistent with KEMI's own records reflecting the Defendant Employer had two locations in Louisville which was an increase from the one location they had in Louisville previously. In fact, there is correspondence from KEMI discussing how to deal with this new client as both are trucking companies and the contact was unsure how to predict the annual payroll generated from these clients. This is clearly an indication that KEMI was aware of the operation they were insuring.

> Therefore, the Administrative Law Judge finds that there existed a policy of Insurance covering Beacon Enterprises. It is further found that this insurance policy covered the employees leased by Beacon Enterprises, an employee leas-

---

4. KEMI asserts, as additional grounds for upholding the Board's decision, for example, that its insured, Beacon Enterprises, failed to comply with several Kentucky statutory and regulatory guidelines relating to employee

leasing arrangements, and that such failure invalidated any part of its policy that might have obligated it to provide workers' compensation benefits to Hoskins.

ing company, to Four Star Transportation on January 31, 2008.

In summary, the ALJ found that there was an employment relationship between Hoskins and Beacon Enterprises and, as such, concluded that Hoskins was covered by the KEMI policy, thereby absolving the UEF from coverage.

KEMI appealed the ALJ's ruling to the Workers' Compensation Board. In its review, the Board agreed with the ALJ's finding that Hoskins believed Four Star was his exclusive employer and was completely unaware of the leasing arrangement whereby Better Integrated or Beacon Enterprises, or both, became his legal employer for obligations associated with his status as a part of Four Star's workforce. However, the Board disagreed with the ALJ's conclusion that either Better Integrated or Beacon Enterprises qualified as Hoskins's employer for purposes of workers' compensation coverage. The Board concluded that because "Hoskins's testimony and all other evidence established that he was hired by Four Star in Louisville"; that Hoskins "had no interaction with or knowledge of Better Integrated"; that "[a]ll of the information he received, except for his health insurance card ... indicated he was employed and paid by Four Star"; and that there was no evidence to establish that Hoskins made a "contract of hire" with any entity other than Four Star.

Specifically, the Board concluded pursuant to the loaned servant doctrine, that:

> Since Hoskins was only aware of one employer, Four Star, Better Integrated could not have legally leased Hoskins to Beacon Enterprises. In order to meet the standard set forth in [the loaned servant doctrine], Hoskins must have known he was employed by Better Integrated and made subsequent contracts

of hire with Beacon [Enterprises] and Four Star.

In short, the Board agreed with KEMI's contention that Hoskins was not an employee of Beacon Enterprises because, among other things, Hoskins was unaware of the assignment arrangements, and was not therefore covered under the Beacon Enterprise KEMI policy. Moreover, the Board concluded that "the evidence ... compel[led] a finding that the alleged agreement involving Hoskins was nothing more than a sham concocted to obtain workers' compensation coverage for Hoskins's injury." Ironically, the effect of the Board's displeasure with this "concocted" sham was to relieve the employee leasing companies that perpetrated it from any responsibility for Hoskins's workers' compensation liability, and to shift that liability to the UEF.

The UEF then appealed; however, the Court of Appeals upheld the Board's decision, adopting the same rationale. Citing *Rice v. Conley*, 414 S.W.2d 138, 140 (Ky. 1967), and *Labor Ready v. Johnston*, 289 S.W.3d 200, 206 (Ky.2009), the Court of Appeals reasoned that:

> One of the most basic rules of workers' compensation in Kentucky is that "[a]n employee, for compensation purposes, cannot have an employer thrust upon him against his will or without his knowledge." And, the loaned employee doctrine is simply an extension of that rule; it "was instituted to protect injured workers and does not permit a special employer to be thrust upon them against their will or without their knowledge, thereby depriving them of the right to sue for damages."

(citations omitted). The Court of Appeals further concluded that because "no evidence indicat[ed] that Hoskins ever formed a contract of hire with Beacon Enterprises," Beacon Enterprises and KEMI could

have no responsibility for his workers' compensation benefits.

Upon our reconsideration of the issue, we conclude that the Workers' Compensation Board and the Court of Appeals misconceived the nature of the employee leasing agreements that existed in this case and as authorized by KRS 342.615. We further determine that the Board and the Court of Appeals erred by applying to an employee leasing arrangement, the "contract of hire" principle borrowed from the loaned servant doctrine.[5] We note that neither *Rice* nor *Labor Ready* involved employee leasing arrangements. We also note that KRS 342.615, which addresses the subject of employee leasing companies, contains no requirement that workers subject to an employee leasing agreement have knowledge of their leased status or of the existence of the "leasing company" involved.

## II. LOANED SERVANT DOCTRINE, EMPLOYEE LEASING COMPANIES, AND KRS 342.615

 The common law loaned servant doctrine, in its most elemental form, captures the notion that "[a]n employee of one person can become the servant of another, alternately or simultaneously, or wholly or partially." *Johnson v. Louisville & N.R. Co.*, 394 S.W.2d 110, 111 (Ky.1965); *see also* Restatement (Second) of Agency § 227, Servant Lent to Another Master, (1958) ("A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services."). A fun-damental principle of the doctrine, however, is that a worker may not be held to be an employee of a business entity unless he or she has knowledge of that master-servant relationship. *See Rice*, 414 S.W.2d at 141. ("'An employee, for compensation purposes, cannot have an employer thrust upon him against his will or without his knowledge.' Larson, Vol. 1A, p. 713, sec. 48.10."). Our predecessor court said in *Rice:*

> This doctrine is found in Larson's works, The Law of Workmen's Compensation, section 48,[6] and reads as follows:
>
> 'When a general employer lends an employee to a special employer, the special employer becomes liable for Workmen's Compensation only if (a) the employee had made a contract of hire expressed or implied with the special employer, (b) the work being done is essentially that of a special employer, (c) the special employer has the right to control the details of the work. When all three of the above conditions are satisfied in relation to both employers, both employers are liable for Workmen's Compensation.'

*Id.* at 140.

Neither *Rice* nor the loaned servant doctrine, which together formed the underpinning of the Court of Appeals opinion, involve an "employee leasing arrangement" as that term is used in KRS 342.615(1)(d). It is therefore of critical importance that we acknowledge the conceptual difference between "loaned servants" and employee leasing arrangements, and so we begin our discussion there.

---

5. In our initial decision in this proceeding we, too, relied principally upon the knowledge requirement embedded within the common law loaned servant doctrine to uphold the Court of Appeals and its determination that Hoskins could not be considered an employee of Beacon Enterprises so as to be covered under its KEMI policy. Subsequent to our initial decision the UEF filed a petition for rehearing pursuant to SCR 76.32(1)(b).

6. *Rice* does not provide a complete citation to Professor Larson's work. However, the above referenced quote appeared in 1A Larson, Workmen's Compensation § 48.00 (1966).

*Rice,* a typical application of the loaned servant doctrine, involved a contract under which workers, regularly employed by a "general employer," were physically assigned on a short-term or temporary basis to perform their labors for a "special employer." In the conventional situations governed by the loaned servant doctrine, workers may perform their services in a variety of working environments for other employers. Under such arrangements, the "general employer" typically hires and trains workers, and for a fee, he "loans" those workers to "special employers" who need their services, usually on a short term or limited basis.

Employee leasing companies, as contemplated in KRS 432.615, operate on a fundamentally different premise and perform a fundamentally different service. Significantly, they generally do not provide workers to employers who need workers. KRS 342.615(*l*)(d) expressly provides, "For purposes of this section, 'employee leasing arrangements' do not include arrangements to provide temporary workers." Instead, employee leasing companies provide employers with a menu of administrative employee-related services, such as payroll management, employee health insurance coverage, unemployment insurance, workers' compensation coverage, savings and retirement plans, and other human resource needs. By securing the services of an employee leasing company, an employer is relieved of the burden and expense of handling those tasks with in-house administrative personnel. In effect, the employer outsources to the employee leasing company certain administrative tasks associated with the management of the client's existing workforce. For a fee paid by an employer like Four Star, the employee leasing company assumes responsibility for the agreed-upon services by becoming, for bookkeeping purposes, the "employer" of the client's workforce, which is then "leased" back to the client, Who is designated as the "lessee" in the arrangement.

The term "employee leasing company" is, perhaps, a confusing misnomer because employee leasing companies do not provide workers in the way that a car leasing company provides cars. In the typical employee leasing arrangement, the "lessee" employer, like any conventional employer, hires, trains, and oversees the performance of its existing workforce. The workers, like Hoskins, do not physically move from the workplace of the leasing company to the workplace of the lessee-employer. Instead, the worker remains as he was: a part of the lessee's existing workforce. He continues to labor for the employer who hired him, and that employer continues to oversee his day-to-day routine. Unlike contract labor providers and temporary employee services, employee leasing companies like Beacon Enterprises and Better Integrated do not send workers to employers that need workers; they provide administrative services for employers who have an existing workforce and prefer to outsource the administrative tasks associated with maintaining their workforce.

In *Labor Ready,* a case involving a temporary labor service company rather than an employee leasing company, we touched upon this critical distinction. We said:

> KRS 342.615(1) creates two classes of workers (leased employees and temporary workers) and two classes of employers (employee leasing companies and temporary help services). Employee leasing arrangements are arrangements in which two or more entities allocate employment responsibilities. KRS 342.615(4) requires the lessee to secure workers' compensation coverage for all leased employees or contract with the employee leasing company to do so,

and it requires the premium to be based on the lessee's exposure and experience. A temporary help service hires its own employees and assigns them to clients for finite periods to supplement the client's workforce during special situations such as employee absences, temporary skill shortages, and seasonal workloads.

289 S.W.3d 200, 207 (Ky.2009).

■ Because a temporary help service, like the one found in *Labor Ready*, and a contract labor provider, like the one found in *Rice*, differ in both purpose and effect from an employee leasing arrangement, like the one found in the instant case, there is no reason to suppose that the rule derived from the loaned servant doctrine for application in the former cases could be wisely extended and applied in the latter; especially when that extension of the rule defeats the very purpose for which the rule exists. The court in *Rice* observed that the loaned servant doctrine was instituted "for the protection of the employee and not for the purpose of allowing a bona fide employer to shift his [workers' compensation] responsibility to a fellow employer under whom he might be operating." *Rice*, 414 S.W.2d at 141. The Board's application of the rule in this case has the paradoxical effect of defeating that purpose. If, as held by the Board and the Court of Appeals, Hoskins's lack of knowledge means that he was not an "employee" of the employee leasing company, then the employee leasing company is relieved of the very burden that it was engaged to provide. Under that application of the rule, keeping Hoskins in the dark allowed Better Integrated and its close relative, Beacon Enterprises, to avoid its workers' compensation responsibility; it left Hoskins without a workers' compensation provider; and it stuck the UEF with the bill.

It makes no sense to extend into the realm of employee leasing companies, the common law rule that "[a]n employee, for compensation purposes, cannot have an employer thrust upon him against his will or without his knowledge,"[7] and we decline to do so. Often, there is little reason for an employee to be concerned with or to know that his employer has engaged the services of an employee leasing company. It may be a prudent policy to explain the details of such arrangements to the employee, but in the usual situation the typical employee would reasonably be indifferent to the fact that certain employee-related administrative duties had been outsourced by his employer to another entity.

■ As additional support for our conclusion, we acknowledge that by enacting KRS 342.615, our legislature has provided for exactly the kind of employee leasing arrangement that existed here. Therefore, in the context of workers' compensation coverage for employees subject to employee leasing arrangements and temporary help services, the common law loaned servant doctrine has been superseded by the statute.[8] KRS 342.615 contains no reformulation of the common law doctrine requiring an employee to have knowledge of his status as a leased employee or of the nature of his relationship with the employee leasing company. We therefore conclude that there is no such requirement.

---

7. *Rice*, 414 S.W.2d at 141 (quoting Larson, Vol. 1A, p. 713, § 48.10).

8. *See Evansville Printing Corp. v. Sugg*, 817 S.W.2d 455, 457 (Ky.App.1991) (citing *Ream v. Dept. of Revenue*, 314 Ky. 539, 236 S.W.2d 462 (1951)) ("Kentucky's Workers' Compensation Statute, evidencing a legislative policy to protect a specific class of workers, is the controlling authority and supersedes common law.")

Our holding today recognizes that the validity of Hoskins's employment relationship with Beacon Enterprises was not dependent upon his knowledge of the employee leasing arrangement. The opinions of both the Board and the Courts of Appeals were based upon the flawed premise that Hoskins's lack of knowledge was the determinative factor. Accordingly, we reverse those decisions.

### III. KRS 342.640

■ As an additional element in its analysis and in support of its conclusion, the Court of Appeals made passing reference to KRS 342.640, which provides:

> The following shall constitute employees subject to the provisions of this chapter [ ]:
>
> (1) *Every person [ ] employed, in the service of an employer under any contract of hire* or apprenticeship, express or implied, and all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer[.]

(emphasis added).

Based upon the statute, the Court of Appeals reasoned that a worker, like Hoskins, who was unaware of his status as an employee subject to an employee leasing arrangement, could not have come to a "meeting of the minds" with his leasing company employer, and therefore no "contract of hire" could exist between them. We reject that reasoning for two reasons.

First, the issue being addressed by KRS 342.640 is whether Hoskins was an "employee" for workers' compensation purposes, and not for any other aspect of the employer-employee relationship. In that regard, KRS 342.640(1) requires "any contract of hire" and it cannot be doubted that Hoskins had a contract of hire with Four Star. Four Star's employee leasing ar-

rangement with Better Integrated (or Beacon Enterprises, as the case may be) did not prevent the formation of the contract of hire between Hoskins and Four Star, nor did it sever any contractual relationship otherwise existing between Hoskins and Four Star. As stated in KRS 342.615(1)(d), an employee leasing arrangement operates as "the allocation of employment responsibilities among two (2) or more entities;" it does not operate to eliminate the relationship of either entity with the worker. The "contract of hire" that otherwise existed between the worker and "lessee" employer remains in effect; that condition of KRS 342.640 was not jeopardized by the employee leasing arrangement.

■ Second, we regard the phrase from KRS 342.640, ". . . if employed with the knowledge, actual or constructive, of the employer," as referring to the *employer's* actual or constructive knowledge of the workers' employment, not the *workers'* actual or constructive knowledge of his employer's identity. The obvious purpose of that phrase is to assure that the employer has actual or constructive knowledge of the employment relationship, lest he be unfairly charged with workers' compensation liability that, because of his lack of knowledge, he had no ability or opportunity to insure. Significantly, there is no corresponding knowledge requirement on the part of the worker, and for good reason. "The primary purpose of the Workers' Compensation Act is to aid injured or deceased workers." *Zurich Am. Ins. Co. v. Brierly*, 936 S.W.2d 561, 563 (Ky.1996). "[W]e are required to interpret the workers' compensation statutes in a manner that is consistent with their beneficent purpose." *Webster County Coal Corp. v. Lee*, 125 S.W.3d 310, 315 (Ky.App.2003). Depriving injured workers of the protections afforded by the statute because they

were ignorant of the legal niceties attendant to the employment relationship is contrary to the purpose of the law. We therefore do not construe KRS 342.640 as support for the conclusion that the UEF is responsible for Hoskins's workers' compensation coverage because Hoskins did not know about the employee leasing agreement.

In summary, we now hold that the loaned servant doctrine was developed to address a set of employment circumstances that is entirely different from an employee leasing arrangement. Terms, such as "special employee" and "general employer," that identify the relevant actors in the loaned servant situation are ill-suited to describe the relationships of an employee leasing arrangement, and conspicuously, KRS 342.615 does not use them. Rules of law developed for a loaned servant situation may also be ill-suited for governing the rights and responsibilities of the parties affected by an employee leasing arrangement. The rule enunciated in *Rice*, and relied upon by the Board and the Court of Appeals, is one such rule. Therefore, in the context of an employee leasing arrangement, we reject the conclusion of the Board and Court of Appeals that KEMI could have no liability for Hoskins's workers' compensation benefits simply because Hoskins had no knowledge of the employee leasing arrangement that may have existed between Four Star, Better Integrated, and Beacon Enterprises.

## IV. CONCLUSION

Because the Court of Appeals grounded its opinion upon Hoskins's lack of knowl-

edge, a rationale we now reject, it did not address other issues raised by KEMI in support of the Board's decision.[9] For that reason, we now remand the matter to the Court of Appeals for further consideration of the unaddressed issues raised by the parties in their respective briefs before the Court of Appeals.

All sitting. All concur.

---

9. For example in footnote three of its opinion, at page 6, the Court of Appeals states: "In addition, KEMI argued that Beacon Enterprises' failure to follow several Kentucky statutory and regulatory guidelines relating to employee leasing arrangements invalidated any part of its policy with Beacon Enterprises that might have obligated it to provide workers' compensation benefits to Hoskins. *We need not address the merits of this argument* because, as explained below, we agree with the Board's conclusion that Hoskins was never Beacon Enterprises' employee." (emphasis added).