# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000637-WC

UNINSURED EMPLOYERS' FUND                               APPELLANT

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | CASE NO. 2011-CA-001322-WC |
|  | WORKERS' COMPENSATION BOARD |
|  | NO. 08-WC-96697 |

JULIAN HOSKINS; KENTUCKY                           APPELLEES
EMPLOYERS' MUTUAL INSURANCE
COMPANY; BEACON ENTERPRISES, INC.;
BETTER INTEGRATED SYSTEMS, INC.;
FOUR STAR TRANSPORTATION, INC.;
KENTUCKY WORKERS' COMPENSATION
BOARD; AND HONORABLE R. SCOTT
BORDERS, ADMINISTRATIVE LAW JUDGE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Uninsured Employers' Fund (UEF), appeals from a decision of

the Court of Appeals holding that Appellee, Kentucky Employers' Mutual

Insurance Company (KEMI), was not the insurance carrier at risk for injuries

sustained by Julian Hoskins in the course of his employment as a truck driver

for Four Star Transportation, Inc. (Four Star), a Michigan-based trucking

company with business operations in Louisville. For reasons set forth below, we affirm the decision of the Court of Appeals.

We addressed this case previously in *Kentucky Uninsured Employers' Fund v. Hoskins*, 449 S.W.3d 753 (Ky. 2014) (*Hoskins I*).[1] In *Hoskins I*, we determined that the Workers' Compensation Board (the Board) and the Court of Appeals erred by resolving the case using principles of law applicable to the loaned servant doctrine. Specifically, the Board and Court of Appeals held that because Hoskins had no personal knowledge of his employment relationship with the employee leasing companies, Better Integrated Services, Inc., or Beacon Enterprises, Inc., those companies and their workers' compensation insurance carrier could not be liable for his workers' compensation award. The result of that ruling left UEF with no recourse.

In *Hoskins I*, we recognized the Board and the Court of Appeals misconceived the nature of the parties' relationships. We concluded from the evidence, as did the administrative law judge (ALJ), that the parties were not engaged in a loaned servant situation, but were instead participating in, or purporting to participate in, an employee leasing arrangement subject to KRS 342.615. Thus, we determined that Hoskins' ignorance of the fact that his legal employer was an employee leasing company could not eliminate that company's liability for his workers' compensation benefits.

---

[1] This Court initially rendered an opinion in this case which is published at 440 S.W.3d 370 (Ky. 2013). However, we granted a motion for rehearing and subsequently rendered this superseding opinion.

2

Consequently, we reversed and remanded the case to the Court of Appeals for the resolution of other issues raised on appeal but left unaddressed by that court's initial opinion. Upon remand, the Court of Appeals again affirmed the Board's decision, this time based upon its conclusion that the Board properly rejected the ALJ's findings material to the imposition of liability upon KEMI. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The case arises from an intricate web of poorly-documented inter-corporate arrangements creating a complex shell-game of who, for purposes of workers' compensation coverage, "employed" Hoskins at the time of his injury, and whether that "employer" had workers' compensation insurance with KEMI. A summary of the essential facts is in order.

In November of 2007, Julian Hoskins saw a "help wanted" sign at Four Star's Louisville office on Ralph Avenue at a trucking terminal Four Star shared with three other trucking companies. Four Star had recently expanded its operations into Kentucky. Hoskins applied for the job as a truck driver; he was hired by Four Star's terminal manager, Sean Green. After training and testing at another Four Star facility, Hoskins began driving trucks marked with Four Star's signage. His work assignments came from Four Star managers. Hoskins perceived himself to be an employee of Four Star; he was aware of no other entity purporting to be his legal employer.

Hoskins' paychecks came in envelopes imprinted with a Four Star address, but like Sean Green's paychecks, they were issued on a bank account

3

of Better Integrated Services. Hoskins testified that his health insurance card may also have had "Better Integrated" on it, but he was not sure. He had no idea who or what Better Integrated was and apparently saw no reason to inquire about it.

Better Integrated (Better) was an employee leasing company serving trucking companies in several states, most notably Indiana and Michigan. Before expanding into Kentucky, Four Star was a client of Better, using Better's employee leasing services to provide workers' compensation insurance for Four Star's workforce. Because Four Star "leased" its entire workforce from Better, Four Star did not have its own workers' compensation coverage.

Better was owned by Vincent Manzo and his son, Salvatore. Each owned a 50% share of Better, but Vincent ran the company. The Manzos were also involved in at least two other employee leasing companies. Beacon Industrial Services was owned 49% by Salvatore, 25.5% by Vincent, and 25.5% by Vincent's wife, Rosaria.[2] A third company, Beacon Enterprises (Beacon), was owned solely by Salvatore, but Vincent served as its treasurer. Rosaria held the office of president, but apparently, she took no part in the operation of the company. The overlapping ownership and closely-connected management of these companies, coupled with their apparent aversion to accurate documentation, makes it difficult to parse with confidence the relationship of each leasing company and the trucking firms they served.

---

[2] Beacon Industrial Services is not a party, and it has no significant involvement in this case.

4

Better had no Kentucky clients when Four Star decided to expand into Kentucky. Better was not registered with the Kentucky Department of Workers' Claims and was not authorized to provide employee leasing services to Kentucky employers. However, Beacon provided employee leasing services to a trucking company in Louisville named Rush Trucking. Beacon had a policy with KEMI to satisfy its obligation to provide workers' compensation insurance for the Rush Trucking workforce.

On January 31, 2008, Hoskins sustained a work-related injury. He promptly informed Sean Green at Four Star of his injury and applied for workers' compensation benefits.

Hoskins' injury and the subsequent filing of his workers' compensation claim exposed the questions of who was Hoskins' true "employer" and how was that employer covering its workers' compensation liability. The UEF covered the claim and reserved its right to be indemnified for those benefits. Four Star had no workers' compensation insurance because it relied upon Better to provide the coverage for Four Star's workforce. Because Better was not registered to do business in Kentucky and until Four Star's expansion into Kentucky had no Kentucky-based clients, Better had no workers' compensation policy in place for Four Star's Kentucky employees, which numbered from four to twelve persons including Hoskins. To provide the necessary coverage, Better claims that it leased the Four Star workforce to its kindred business, Beacon, thus securing the required coverage through

5

Beacon's policy with KEMI.[3] KEMI denied that its policy with Beacon included any part of Four Star's workforce.

Through the testimony of the Manzos and Charles Garavaglia,[4] the consultant and corporate representative for both Beacon and Better, Better claimed that before Hoskins was injured, it had a written employee leasing contract by which Beacon "leased" Hoskins and assumed the obligation to provide his workers' compensation coverage. No copy of an actual signed contract was ever produced, but a blank form said to be identical to the one used was put into evidence. No other documents or corporate records were produced to establish when, or if, Beacon "leased" Hoskins and acquired the responsibility for his workers' compensation coverage.

KEMI's audit records showed that at about the same time as Four Star's expansion into Kentucky, Beacon's Kentucky payroll substantially increased from $2,000,000.00 to $5,073,459.00. Correspondingly, Beacon's premium for KEMI's policy increased from about $300,000.00 to $749,001.72. Beacon

---

[3] Although witnesses spoke in terms of Better "leasing" Hoskins to Beacon, and Beacon, in turn "leasing" him to Four Star, it should be understood that, consistent with Hoskins' testimony, he was not physically moved from lessor to lessee; in the relevant time frame, he was always part of Four Star's workforce. What the witnesses mean by "leasing" him is that, through leasing company exchanges, the legal responsibilities for his employment were transferred from one company to the other.

[4] Garavaglia was well versed in employee leasing companies in the trucking industry, having owned a number of such companies, including Better, which he sold to Vincent Manzo several years prior to Hoskins' injury. Garavaglia served as a business consultant to the Manzos and others engaged in trucking company employee leasing. Garavaglia was also convicted of mail fraud and conspiracy for his role in a scheme to use his employee leasing firms to defraud workers' compensation insurance companies. *See United States v. Garavaglia*, 178 F.3d 1297 (6th Cir. 1999).

reported to KEMI that it had taken on "new clients" at a second Louisville address, the same Ralph Avenue terminal from which Four Star operated.

KEMI, however, presented evidence establishing that the calculation of the premium charged to Beacon never included any employees on Better's payroll and was not based upon claims experience derived from either Better or Four Star. According to KEMI, the increase in Beacon's premium was based entirely upon Beacon's previous underestimation or underreporting of its payroll. KEMI had no knowledge of a three-way employee leasing arrangement between Four Star, Better, and Beacon.

KEMI denied any workers' compensation responsibility for the workers at Four Star's Ralph Avenue terminal subject to lease by Better. Moreover, KEMI demonstrated that on three occasions Beacon had expressly sought to include Better as a named insured party under the KEMI-Beacon workers' compensation policy, but each time KEMI refused. KEMI declined the request because Better was not authorized to do business in Kentucky, because Better had no corporate presence in Kentucky, and because KEMI had no information upon which to base an accurate evaluation of the risk involved in underwriting Better's workers' compensation exposure and determining the proper premium. KRS 432.615(4) requires that when a workers' compensation insurer (KEMI) provides coverage to an employee leasing company (Beacon), "[t]he exposure and experience of the lessee (Four Star) shall be used in determining the premium for the policy and shall include coverage for all leased employees."

From these circumstances, the ALJ deduced that Better and Beacon agreed to lease the Four Star workforce from Better to Beacon, thereby transferring the employer responsibilities for Hoskins from Better to Beacon, bringing Hoskins (and Four Star's other workers) within the coverage afforded by KEMI's workers' compensation policy.

The Board disagreed and reversed the ALJ's findings. The Board concluded that because "Hoskins' testimony and all the other evidence establish[ed] he was hired by Four Star in Louisville" and that he "had no interaction with or knowledge of Better Integrated" he could not be a leased employee of either Better or Beacon. The Court of Appeals agreed. On discretionary review in *Hoskins I*, we agreed with the factual premises, but we disagreed with the legal conclusion drawn from those facts. Hoskins could indeed be a leased employee despite his ignorance of that fact.

The Board had also reversed the ALJ's finding on other grounds. With respect to KEMI's premium, the Board found "no evidence to support" the ALJ's finding that Beacon's payroll increase of over $3 million was due to the addition of Four Star's workforce at Ralph Avenue (which according to Garavaglia was four to twelve workers) and "no evidence to support" the finding that KEMI collected an additional $449,000.00 premium to cover those workers. The Board also concluded that no evidence was presented which would reasonably support the finding of any relationship between Hoskins and Beacon giving rise to a workers' compensation obligation. On remand from *Hoskins I*, the Court of Appeals affirmed those conclusions of the Board.

8

## II. ANALYSIS

Pursuant to KRS 342.285, the ALJ in a workers' compensation proceeding is the finder of fact with exclusive authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008) (citation omitted). "Where the party with the burden of proof fails to prevail before the finder of fact, his burden on appeal is to prove that the evidence in his favor was so overwhelming that it compelled a finding in his favor and that no reasonable person would have failed to be persuaded by it." *Bullock v. Peabody Coal Co.*, 882 S.W.2d 676, 678 (Ky. 1994) (citations omitted).

It is acknowledged that KEMI had the burden of proof before the ALJ to establish that Hoskins was not covered by the workers' compensation policy issued by KEMI to Beacon. Having failed to persuade the ALJ, KEMI bears the burden set forth above. We conclude that it met that burden.

KEMI established without contradiction that it had expressly rejected Beacon's request to add Better's workers' compensation exposure to Beacon's policy. Neither Better nor Four Star is named as an insured entity in Beacon's policy. KEMI also demonstrated that the premium increase of $449,000.00 could not have been generated by the inclusion of Better's payroll because: 1) the increase was due to an earlier underestimation of Beacon's payroll; and 2) KEMI never got the information about Better's Four Star payroll upon which to calculate an added premium. That was one of the reasons KEMI declined to insure Better; it was not given the information needed to evaluate the risk and

9

calculate the cost of underwriting Better's exposure. Since KRS 432.615(4) requires that the premium be based upon the "[t]he exposure and experience of the lessee (Four Star)," KEMI had a right to accurate information about the true lease before agreeing to provide coverage. Beacon's failure to supply that information justified KEMI's refusal to add Better's employees working for Four Star.

We can be virtually certain that Four Star's workers were not included in Beacon's payroll for premium assessment purposes because it is undisputed that Hoskins and Sean Green were at all times paid by Better. Had they actually been leased to Beacon at the time of the injury, then Beacon would have been issuing their paychecks. No evidence was presented that any Four Star worker was ever paid by Beacon. These facts compel the conclusion that, at the time of his injury, neither Hoskins nor the rest of Four Star's workforce was leased to Beacon. Significantly, there was no written documentation in the form of employee leasing contracts, assignments, payroll, or tax records to prove otherwise.

The ALJ inferred that KEMI had actual knowledge that Beacon had undertaken the workers' compensation responsibility for Four Star's workers at the Ralph Avenue location because that address was mentioned on Beacon's 2007 application to renew its workers' compensation policy. The ALJ suggested that KEMI's failure to investigate that location to see who was working there undermines its denial of coverage for Hoskins. We acknowledge that KEMI could have investigated further, but it had no duty to do so,

10

especially when Beacon could easily provide its employee information. In any event, KEMI's failure to inquire about the address does not make it the de facto workers' compensation insurer for all the workers at the Ralph Avenue facility where four different trucking companies operated.

Certainly, the testimony of Salvatore Manzo and Charles Garavaglia provides "some" evidence to support the finding that upon starting his job at Four Star, Hoskins became an employee of Better, who then leased him to Beacon. However, nothing supports that testimony, and all of the documentary evidence points in the opposite direction. We are well satisfied that the evidence in total compels a finding that Hoskins was not covered as a Beacon employee subject to KEMI's policy. No reasonable person could fail to be persuaded by it.

KEMI further contends that because neither Beacon nor Better had complied with the registration requirements of KRS 342.615 and 803 KAR 25:230, any obligation KEMI might otherwise have for Hoskins' benefits is "a nullity."[5] Because we affirm the Board and the Court of Appeals for the reason stated above, we need not determine whether an employee leasing company's

---

[5] The cited registration laws require employee leasing companies doing business in Kentucky to provide, among other things, their lessees' corporate and assumed names, contact information, federal employer identification numbers or Social Security numbers, and the company providing the workers' compensation coverage for their lessees' workers. The employee leasing company must also provide its own name and corporate address, business locations within the state, its taxpayer or employer identification number, the effective date of the workers' compensation coverage, the policy number, and the name of the issuer of the policy; and the termination of coverage date.

failure to comply with Kentucky's registration requirements renders an otherwise valid policy unenforceable. We defer our ruling on that issue for a more appropriate occasion. We note, however, that Beacon's and Better's failure to properly register is a factor that undermines their claim and lends credence to the belief expressed by the Board and echoed by the Court of Appeals that their purported lease agreement was "nothing more than a sham concocted to obtain workers' compensation coverage for Hoskins's injury."

## III. CONCLUSION

For the reason stated above, we affirm the opinion of the Court of Appeals, affirming the decision of the Board in this matter.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Dennis Stutsman
1112 Taborlake Drive
Lexington, KY 40502-6572

Andy Beshear
Attorney General of Kentucky

COUNSEL FOR APPELLEE JULIAN HOSKINS:

Alan Steven Rubin
231 S. 5th Street, Suite 200
Louisville, KY 40202-3231

COUNSEL FOR APPELLEE KENTUCKY EMPLOYERS' MUTUAL INSURANCE COMPANY:

Barry Lewis
Lewis and Lewis Law Offices
151 East Main Street, Suite 100
P.O. Box 800
Hazard, KY 41702-0800

COUNSEL FOR APPELLEES BEACON ENTERPRISES, INC. AND
BETTER INTEGRATED SYSTEMS, INC.:

Terrance J. Janes
"Deceased"

COUNSEL FOR APPELLEE, KENTUCKY WORKERS' COMPENSATION BOARD:

Dwight Taylor Lovan
Executive Director Office of Workers' Claims

COUNSEL FOR APPELLEE HONORABLE R. SCOTT BORDERS:

Russell Scott Borders
Fogle, Keller, Purdy, PLLC
1655 Burlington Pike, Suite 50
Florence, KY 41042

COUNSEL FOR APPELLEE FOUR STAR TRANSPORTATION:

N/A