RENDERED: FEBRUARY 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0717-WC

SYSCO FOOD SERVICE                                                    APPELLANT

v.
PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-17-66274

TERRY HECKEL;
HONORABLE CHRIS DAVIS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD OF KENTUCKY                                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CLAYTON, CHIEF JUDGE: Sysco Food Service appeals from an opinion of the

Workers' Compensation Board affirming the Administrative Law Judge's (ALJ's)

opinion, award, and order. The ALJ awarded Terry Heckel, a former Sysco

employee, permanent partial disability (PPD) benefits for a work-related injury. At issue is whether the ALJ erred in also applying the three multiplier, which is awarded when an employee does not retain the physical capacity to return to the type of work he performed at the time of the injury, for the full duration of the PPD benefit period. *See* Kentucky Revised Statutes (KRS) 342.730(1)(c)1. Having reviewed the record and the applicable law, we affirm the opinion of the Board.

Heckel was born in 1958. He completed the twelfth grade but has no additional specialized or vocational training. Heckel's employment with Sysco began in 1981 and ended in October 2020 when he retired. For the final twenty years of his employment, he worked as the freezer receiver. His tasks included checking the paperwork of products arriving on trucks, inspecting the products to check for outdated or damaged goods, and labeling the products. He carried a scanner and label machine strapped across his hip. The job involved lifting boxes which weighed an average of fifty pounds but could weigh as much as seventy pounds. Approximately 50,000 cases of goods were processed daily. When Heckel's supervisor was unavailable, Heckel served as lead man supervising fifteen to twenty people.

On August 28, 2018, a forklift operator who failed to see Heckel ran into him with a pallet, lifting him off the ground. Heckel's left arm was raised overhead at the time of the impact. He testified that his left shoulder, right

shoulder, and big toes hurt after the accident.  He was diagnosed with a left shoulder rotator cuff tear.  He began treatment with orthopedic surgeon Dr. Ryan Krupp.  Heckel worked with difficulty until November 16, 2018, when Dr. Krupp performed arthroscopic surgery to repair the left shoulder rotator cuff.  On January 4, 2019, Dr. Krupp performed a total left shoulder replacement.

Heckel returned to light duty work on March 4, 2019 and then full duty on April 4, 2019, with restrictions on lifting, pushing, and pulling.  He took a voluntary COVID-19 furlough in April and May 2020.  He retired early on October 23, 2020.

The medical witnesses were largely in agreement as to the level of impairment and work restrictions.  Dr. Krupp assessed a 21 percent impairment rating and permanent work restrictions of no lifting, pushing, or pulling more than 20 pounds, no repetitive pushing or pulling for more than two hours per day, and no work above shoulder level.

Dr. Thomas M. Loeb, who conducted an independent medical exam (IME) on November 10, 2020, opined that Heckel had reached maximum medical improvement one year after the shoulder replacement surgery.  He assessed a 22 percent impairment rating and recommended work restrictions consistent with those recommended by Dr. Krupp.

The ALJ entered an opinion, award, and order finding that Heckel has a 22 percent impairment rating, based on Dr. Loeb's report, and awarded PPD benefits based on that rating for 425 weeks commencing from the date of the injury. Having found that Heckel had not retained the physical capacity to return to the type of work he had performed at the time of the injury, the ALJ applied the three multiplier as provided in KRS 342.730(1)(c)1.

The ALJ made the following findings to support his application of the three multiplier: "I accept [Heckel's] testimony and find him entirely reliable. He only worked a few weeks after his surgery and even that time he remained under restrictions. He volunteered to be furloughed due to Covid because he was having trouble with his left shoulder. He retired early, at less than full benefits, due to his shoulder. All doctors who have given restrictions limit him to lifting less than 50 pounds, which he testified was a basic requirement. He never, as [Sysco] has argued, returned to work at full capacity or without issues. He lacks the capacity to return to the type of work done on the date of the injury and KRS 342.730(1)(c)1[.] [applies]."

Sysco filed a petition for reconsideration, arguing in part that the ALJ erred in awarding the three multiplier for the entirety of the award of PPD benefits. It contended that the award should not be enhanced by the multiplier for the period

-4-

that Heckel returned to work at full pay following the surgery.  The ALJ denied this request and the Board affirmed.  This appeal by Sysco followed.

As the claimant, Heckel bore the burden of proving the elements of his claim.  *Trevino v. Transit Authority of River City*, 569 S.W.3d 400, 403 (Ky. 2019).  When, as in this case, the party with the burden of proof is successful before the ALJ, "the issue on appeal is whether substantial evidence supported the ALJ's conclusion.  Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018) (internal quotation marks and citations omitted).  "The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP CAC Inc. v. Fleming*, 520 S.W.3d 382, 386 (Ky. 2017) (citation omitted).  Upon review, we "correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

When, as in this case, we are called upon to interpret a statute, "we look first to the plain language . . . , affording words their ordinary meaning." *Consolidated Infrastructure Management Authority, Inc. v. Allen*, 269 S.W.3d 852,

855 (Ky. 2008). "We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." *Id*. (quoting *Commonwealth v. Harrelson*, 14 S.W.3d 541, 546 (Ky. 2000)). "Statutes must be liberally construed so that the intent of the legislature is carried out. KRS 446.080(1)." *Id*. "The primary purpose of the Workers' Compensation Act is to aid injured or deceased workers. [W]e are required to interpret the workers' compensation statutes in a manner that is consistent with their beneficent purpose." *Kentucky Uninsured Employers' Fund v. Hoskins*, 449 S.W.3d 753, 762 (Ky. 2014) (internal quotation marks and citations omitted).

Heckel's PPD benefits were enhanced pursuant to the following statutory provision:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments[.]

KRS 342.730 (1)(c)1.

Sysco argues that Heckel should not have received the three multiplier for the approximately eighteen-month period during which he returned to work performing the same job and earning the same or greater wages as before his injury. Sysco points out that there were no special extreme accommodations made

-6-

for Heckel, as there were for the claimant in *Gunderson v. City of Ashland*, 701 S.W.2d 135 (Ky. 1985), nor was there any evidence that Heckel had to make extraordinary efforts to rise above his disability.

In affirming the ALJ's opinion, the Board relied on the plain language of the statute, stating: "Nothing within KRS 342.730(1)(c)1[.] suggests the three multiplier can be awarded for only a portion of the award of PPD benefits. In fact, use of the word 'shall' in the statute indicates that the three multiplier must enhance the award of PPD benefits for the entirety of its duration." The Board concluded that it was not at liberty to interpret the statute in any other way.

We agree with the Board that the plain language of the statute simply does not contemplate an application of the multiplier to only a portion of the PPD award.

Furthermore, the ALJ's finding that Heckel was not able to perform his previous work throughout the period is supported by substantial evidence in the record. "When used in the context of an award that is based upon an objectively determined functional impairment, 'the type of work that the employee performed at the time of injury' was most likely intended by the legislature to refer to the actual jobs that the individual performed." *Ford Motor Co. v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004) (citation omitted). Although Heckel was able to return to his previous position and wages, there is substantial evidence that he had

ongoing difficulty performing the actual tasks due to the medical restrictions connected with his shoulder injury, that he required assistance, and that he retired early due to these problems.

His situation is distinguishable from that of the claimant in *Underwood v. Pella Windows Depe PLLC*, No. 2016-CA-001424-WC, 2017 WL 1203227 (Ky. App. Mar. 31, 2017), an unpublished case cited by Sysco. Underwood returned to work following his injury and initially performed his regular job at his regular wage. The Court held that he was not entitled to permanent total disability benefits until he stopped working, holding that, "as a matter of law, a worker cannot be considered totally permanently disabled during a period he continues to work at his regular job, with no accommodations, at full wages." *Id.* at *2. Sysco argues that Heckel similarly should not have his benefits enhanced during periods when he was performing the same job and earning the same or greater wages.

But Sysco has not challenged the ALJ's finding that Heckel was partially permanently disabled, which, unlike total permanent disability, specifically means he retained the ability to work. "Permanent partial disability" is defined as "the condition of an employee who, due to an injury, has a permanent disability rating but retains the ability to work[.]" KRS 342.0011(11)(b). A claimant must establish three elements to be entitled to PPD benefits: "a statutory

injury; an impairment rating pursuant to the [*American Medical Association*] *Guides*; and the ability to work, albeit with restrictions." *Greene v. Paschall Truck Lines*, 239 S.W.3d 94, 108 (Ky. App. 2007). Sysco does not dispute that Heckel proved all three elements of his PPD claim. Rather, its argument is directed solely at the enhancement of his PPD benefits, which is controlled by KRS 342.730(1)(c)1.

The analysis of the Board is fully in keeping with the plain language of the statute, the evidence in the record that Heckel did not retain the physical capacity to continue performing his job at Sysco, and the beneficent purpose of the workers' compensation statutes. Its opinion affirming the opinion, award, and order of the ALJ is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Rodney J. Mayer
Louisville, Kentucky

BRIEF FOR APPELLEE TERRY HECKEL:

Wayne C. Daub
Louisville, Kentucky